# CHARLESTON.

J. O. McDermitt *v.* Joseph Moore *et als.*

Submitted October 19, 1920.    Decided October 26, 1920.

Appeal and Error—*Approved Findings of Commissioner in Chancery Conclusive if Not Clearly Against Evidence.*

The findings of a commissioner in chancery based upon conflicting oral evidence, confirmed by the circuit court, will not be reversed by this court, unless it appears that such findings are against the clear preponderance of the evidence.

(Williams, President, absent.)

Appeal from Circuit Court, Kanawha County.

Suit for injunction by J. O. McDermitt against Joseph Moore and others.   Decree for defendants, and plaintiff appeals.

*Affirmed.*

*B. H. Blagg* and *William G. Barnhart,* for appellant.
*J. E. Springston,* for appellee.

Ritz, Judge:

This suit in equity was instituted for the purpose of enjoining the defendants from executing a deed of trust by making sale of the property therein conveyed, in satisfaction of the debt thereby secured to the defendant J. H. Moore, upon the ground that upon a settlement of the affairs between the plaintiff McDermitt and the defendant Moore it would be found that said deed of trust was satisfied and discharged.   From a decree ascertaining that the said plaintiff was indebted to the said Moore in the sum of $925.86, with interest thereon from the 31st day of October, 1918, until paid, and directing the trustee to execute the deed of trust by sale of the property conveyed thereby

in satisfaction of said amount, unless the same was paid, plaintiff prosecutes this appeal.

The deed of trust in question was given to secure the payment of two notes, one for the sum of $500.00, and one for the sum of $700.92. The validity and amount of these notes are not questioned, but the plaintiff contends that after their execution, because of transactions between him and the defendant Moore, the notes were satisfied and discharged. These transactions involve the interest of the plaintiff in profits upon a sale of timber upon a tract of land in Putnam county, and the sale of a farm in Mason county. The defendant Moore denied in his answer the claims of the plaintiff, and set up in addition to the notes secured by the deed of trust aforesaid an account due him by the plaintiff amounting to about two hundred dollars. This account is likewise unquestioned by the plaintiff, and the only questions involved here are whether or not the plaintiff is entitled to any credits upon these debts because of the timber sold in Putnam county, and the sale of the farm in Mason county, and if he is, the amount of such credits. The cause was referred to a commissioner in chancery to take the evidence upon these questions, and find the facts in regard thereto. This commissioner found the amount due the defendant Moore on a settlement of the affairs between the parties to be as decreed by the court. Upon the request of the plaintiff, concurred in by the defendant, the case was recommitted to another commissioner, who took further evidence, and upon consideration of the evidence formerly taken, as well as the additional evidence, he made the same findings of fact as the first commissioner. The circuit court then upon exceptions to the commissioner's report, confirmed the same, and decreed in favor of the defendant Moore, as above stated.

It appears that the Plymouth Coal Company owned a tract of timber in Putnam county, and that the plaintiff was authorized to make sale of the same at the price of $32,500.00. He approached the defendant Moore for the purpose of making a sale thereof to him. Moore, it appears, advised him that he was not able to make the purchase, it requiring $12,500.00 in cash therefor. According to Moore, plaintiff told him that he

was to receive five per cent. commissions for making the sale at the price of $32,500.00, and that if Moore would purchase the timber at that price, and would let the plaintiff have one-fourth of whatever profit they made upon a re-sale, or upon the manufacture of the timber, he would treat his commissions as part of the purchase price. The plaintiff admits that he agreed to put in his commissions under the above arrangement, but he denies that he said they were to be five per cent. On the contrary, he says that he told Moore that it was not determined how much commission he would receive, but that he thought he ought to have five per cent. At this point it may be interesting to remark that the plaintiff introduced the manager of the coal company who testified that the understanding and agreement with the plaintiff, at the time he was authorized to make sale of the timber was that he was to have only two and one-half per cent. commissions, so that even upon the plaintiff's own statement he did not truly represent the facts to Moore. As before stated, Moore was not able to make the purchase on these terms, but at McDermitt's solicitation he approached John C. Malone, a banker in the city of Charleston, with the idea of securing his assistance. The proposition was explained to Malone, and he secured a man by the name of Steinbeck to go upon the timber and examine it with a view of determining whether there would likely be a profit in the transaction. Stienbeck, representing Malone, went upon the tract of land with McDermitt, and McDermitt told him, so Stienbeck swears, that if Malone and Moore would take the timber he would put in his commissions, which were five per cent., provided he was given one-fourth of any profits which accrued upon a resale. Steinbeck thereupon reported to Malone that he thought the proposition a good one upon the terms proposed by McDermitt, and Malone then suggested that Stienbeck also become one of the purchasers, to which he agreed. The purchase was then made and Stienbeck and Malone put up half of the cash payment required, and Moore the other half, all of the parties swearing that it was the understanding that Moore would divide the five per cent. commissions, which he told them he would receive, between them

as part of the profits on the deal when the timber was resold. The timber was resold for the sum of $40,000.00, Moore, Stienbeck and Malone receiving $20,000.00 in cash, and the purchaser assuming the deferred payment of $20,000.00. This was a profit of $7,500.00, considering the purchase price $32,-500.00, and considering the five per cent. commissions, or $1625.00, as part of their profits, the same would have been $9125.00, or $2281.25 to each of the parties. Stienbeck and Malone each received $2281.25 as their part of the profits. McDermitt made a settlement with the coal company for his commissions at two and one-half per cent., or $812.50, and in a settlement with Moore contended that there should only have been included in their calculation of profits $812.50, instead of $1625.00, and this is the controversy between the parties so far as that transaction is concerned. In addition to the parties themselves, two other witnesses, who were officers of the corporation that bought the timber, testified that McDermitt told them that his arrangement with Moore and Malone and Steinbeck was that he was to put in his commissions as part of the profits, and that his contract for commissions was five per cent. That McDermitt's contract only called for two and one-half per cent. commissions can scarcely be doubted. The coal company's representative so testifies, and McDermitt made settlement for that amount, which he would not likely have done had it not been in accordance with his contract. But the terms of McDermitt's contract with the coal company can make little difference. Upon the faith of his representations that his commissions were five per cent., and that this would be treated as part of the profits in handling the timber, the other parties went into the transaction, and they are entitled to hold him thereto. Two commissioners and the judge of the circuit court have found these facts against him, and we think that finding is entirely justified if not demanded by the evidence introduced.

In regard to the Mason county farm transaction, it appears that McDermitt secured an offer from the owner to sell a tract of four hundred and some acres of land in Mason county for the price of $15,000.00, $3000.00 to be paid in cash, and the

balance in annual installments of $2000.00 each, with interest payable semi-annually. He took up with Moore the proposition of buying this farm, but Moore was not able to make the cash payment of three thousand dollars. He then interested a man by the name of Swisher, and Swisher and Moore together made the purchase, paying the three thousand dollar cash payment, with the understanding and agreement, as testified to by all of the parties that they would divide the profits upon a resale of the farm equally among them. This purchase was made in March, 1915. Moore and Swisher went upon the farm and cultivated something over two hundred acres during that summer, and that fall made a sale of it, together with the crop that had been raised• thereon, and all of their implements and certain live stock that was on the farm, for the sum of $21,000.00. Of this sum one thousand dollars was paid in cash. They received three notes aggregating two thousand dollars executed by . a brother of the purchasers, which were secured by a vendor's lien upon some land in Clay county, and for the balance, $18,000.00, the purchasers assumed the payment of the $12,000.00 to the original owner, and executed notes · for the difference between that and the $18,000.00, or six thousand dollars. It appears that the personal property which was turned over with this sale, including the crop raised upon the farm, which consisted of a large amount of corn, fodder and hay, and the agricultural implements, and stock, were valued at about $2,500.00. The purchasers entered upon the farm and disposed of practically all of the personal property during the fall of 1915. They defaulted in the spring if 1916, and the farm and such personal property, which was small in amount, as could be recovered, were sold under the deed of trust given by them to secure the deferred payments. At this sale Moore and Swisher bought in the same for $13,000.00. Of this sum three thousand dollars was paid in cash, $2720.00 of it to the former owner to take up the first note of two thousand dollars, and to pay the annual interest of $720.00, and the balance for costs and expenses of sale. The remaining ten thousand dollars was discharged by assuming to pay the notes for that sum due the

former owner. The purchasers were insolvent and availed themselves of the bankruptcy law, so that nothing was realized, or will ever be realized from them on account of their notes not paid by the sale under the deed of trust. Shortly thereafter Moore had an opportunity to sell his interest in the farm if he could have it divided. He negotiated with Swisher for a division of the farm, and they made partition of it, laying off the interest of each separately. They had upon the farm some live stock and farming implements, in which each was a half owner. Moore sold the part of the farm laid off to him, as well as his interest in the personal property thereon, for the sum of $8500.00, it being shown that his offer to the purchaser was to sell the land for $8000.00, or the land and his interest in the personal property for $8500.00, and the purchaser accepted the latter offer. McDermitt contends that he is entitled to one-third of the profits made upon the resale of this farm by Moore and Swisher in the fall of 1915 for $21,-000.00, or two thousand dollars, one-half of which should be paid to him by Moore, while Moore contends that while they made sale of the farm at that price at that time, this sale included a large amount of personal property, and that they were compelled, in order to protect themselves, to repurchase the farm at the trustee's sale, and that upon the sale which he made of his interest in the farm, instead of realizing a profit, he actually lost money. It clearly appears from the evidence that Moore and Swisher did not receive from the purchasers sufficient money to pay for the personal property which they turned over with the farm. This property is shown to have been worth about $2500.00. They received one thousand dollars in cash, and the three notes above referred to. They were compelled to bring a suit to collect these notes and realized thereon the gross sum of $1450.00, or a total of $2450.00, out of which they had to pay attorney's fees and expenses of prosecuting the suit, so that it cannot be said that any of this money was received for the farm. For his interest in the land Moore received only the sum of $8000.00. Admittedly it cost him $7500.00. He paid one-half of the interest for the first year, or $360.00, and numerous other items of ex-

pense were incurred by him, as shown by the evidence, making the cost of the land to him more than $8000.00, the amount received, so that the finding of the commissioner, approved by the circuot court, that there was no profit realized by Moore on this transaction, is clearly sustained by the evidence.

It is assigned as error that the commissioner refused to require Moore to submit himself for further cross-examination after he had been upon the witness stand on two occasions and cross-examined at length. The matter upon which it is said the plaintiff desired to further cross-examine him was as to the cost of raising the crop upon the farm during the season of 1915. Even if it be admitted that the commissioner could properly require him to submit himself to further cross-examination, after the plaintiff had had ample opportunty to cross-examine him, and had done so, the mater upon which this further cross-examination was desired was entirely immaterial to the issues involved in this case. McDermitt had no interest in the farm, his only interest being a share in the profits when the same should be re-sold. There is no intimation that Moore and Swisher did not endeavor to sell the farm, and that Moore did not sell his interest for as much money as he could get.

We are clearly of the opinion that the findings of the commissioners, approved by the circuit court, are justified by the evidence, and the decree appealed from will be affirmed.

*Affirmed.*