O. E. HARWOOD *v.* JULIA I. HARWOOD

(No. 7215)

Submitted May 18, 1932.   Decided May 24, 1932.

*Forrest B. Poling* and *J. Blackburn Ware,* for appellant.
*Kittle & Kittle* and *W. B. Talbott,* for appellee.

LIVELY, JUDGE:

The decree awarded plaintiff, the husband, a divorce *a mensa* on the ground of desertion, and the care and custody

of the two minor children, with privilege to defendant, the wife, to visit them at all reasonable times in a peaceful and quiet manner. Defendant appeals.

The parties were married in 1906, and reared four children, the eldest, a girl, is about 25 years old, the next, a girl, about 23, then a boy, now about 16, and the infant, a girl, now about seven years old. The older children were educated, the boy now being educated, and domestic tranquility was reasonably good until about the year 1923, when quarrels became frequent often degenerating into personal encounters usually resulting in favor of the wife, who was prone to use offensive weapons. About 1927, a controversy arose over the work the boy was doing at the father's garage. He, the boy, was loath to go to work one morning because he and the chief mechanic did not agree, and the father was insisting that he go to the garage and resume work when the mother interfered. They were in the library and the father slapped the mother for her language and interference according to the boy, (the father says he threw up his arm to ward off an assault). Then a personal encounter began, and the father retreated upstairs pursued by his spouse armed with some weapon of offense, and the encounter continued resulting in the serious discomforture of the husband who emerged with some fractured ribs necessitating the immediate administrations of a physician. He thereupon instituted a suit for divorce, but a reconciliation was effected, and the suit dismissed. Further fighting ceased after that date, but the quarrels were incessant accompanied by swearing and intemperate language used by both. There were petty jealousies, which were made the excuses for quarrels and bickerings. And often quarrels would begin without appreciable cause. Each would go out frequently at night returning late, and refuse to tell the other where and how the evenings had been spent; and the husband would often be gone from home for some days (he says on business) and would refuse to give an account of his absences. His father, who seems to have been a man of means, spent probably a year with them, and rendered financial aid; but he says the wife became so in-

temperate that he left, after some personal indignity. Quarrels then originated over money matters. About three weeks before defendant left the home (the desertion for which the suit is prosecuted) she had packed and was starting to leave one morning on the six o'clock bus when the husband locked the door to prevent her from going, and with the help of the children persuaded her to stay. Later, on August 29, 1930, she wanted money to spend and upon being refused (he said he did not have the money) she left late that afternoon without telling anyone of her intention or destination and went to Washington, D. C., where she obtained work agreeable to her. She wrote to one of her daughters to send her belongings, and said she was well satisfied and that she thought a divorce should be had, but not to let the father know of her whereabouts. She claims she told her daughter over long distance 'phone to tell her father to come after her, and the girl says she delivered the message and her father declared he would not go. It does not appear when this message was delivered, whether before or after the suit was instituted at October Rules, 1930. On October 26, 1930, she suddenly reappeared at the home in Philippi and announced that she had returned to her children. The husband told her that so far as he was concerned she had returned too late. She then established herself in a different portion of the house, defended the pending suit by answer and cross-bill charging cruel and inhuman treatment and asking for decree in her favor, and for alimony and suit money. She was awarded alimony and suit money. The depositions taken before the commissioner, to whom the cause was referred, consist principally of evidence of members of the family and are conflicting and unsatisfactory. The commissioner reported that defendant was equally responsible, if not more so, for the conditions which she alleged were responsible for her leaving. The distinguished trial chancellor, in an extended written opinion fully reviewing the evidence, sustained the finding of the commissioner and citing the decisions of this court for the law applicable to his findings of fact. He found that no one had sought for or asked a reconciliation, citing, among

others, the cases of *Duff* v. *Duff*, 145 Va. 526, 134 S. E. 555; *McKinney* v. *McKinney*, 77 W. Va. 58, 87 S. E. 928. He found that defendant had not sustained the charges of her answer and cross-bill.

Where one spouse abandons the other and charges as justification therefor cruel and inhuman treatment on the part of the other, and the evidence is conflicting, contradictory and unsatisfactory; and the trial chancellor on such evidence (buttressed in this case by the finding of the commissioner) has found that the charges have not been sustained, this Court will refuse to reverse, although it might have rendered a different decree if it had acted thereon in the first instance. *Vickers* v. *Vickers*, 89 W. Va. 236, 109 S. E. 234; *Wegman* v. *Clark*, 94 W. Va. 364, 374, 118 S. E. 517. Questions of fact determined by a commissioner upon contradictory evidence and approved by the lower court, cannot be disturbed on appeal, unless the error be palpable. *Fry* v. *Feamster*, 36 W. Va. 454, 15 S. E. 253; *Bank* v. *Bowman*, 36 W. Va. 649, 14 S. E. 989; *Mahan* v. *Graham*, 21 W. Va. 698. Such is the rule established by a host of our decisions, and so well established, that citations are superfluous. We have been somewhat disturbed as to the custody proper for the infant daughter; but under the whole circumstances of the case, the chancellor's discretion cannot be disturbed. He lives in the same city where the parties reside, and has continuing jurisdiction to protect the child's welfare as and when future circumstances may warrant.

We affirm the decree.                                   *Affirmed.*