JOHN W. MONK, *et al.*

*v.*

WILLIAM HARVE GILLLENWATER, *et al.*

(No. 10704)

Submitted April 26, 1955.        Decided May 31, 1955.

*W. Robert Carr, Clark M. Thornton,* for appellants.

*H. F. Day,* for appellees.

BROWNING, JUDGE:

Plaintiffs filed their bill of complaint in the Circuit Court of Mercer County asking that defendants be enjoined from maintaining a gate across the road which leads from their homes through defendants' land to the main highway, and from interfering in any way with their continued use of the road as a means of ingress and egress, alleging that such road is a part of the old Raleigh-Wythe Turnpike, and that plaintiffs have used it continuously, openly, visibly and adversely, under claim and color of right, since prior to 1907, until interrupted by the defendants in 1953. Plaintiffs also allege that their properties and the property of the defendants derive from a common source of title, and, though admitting that the road continues on in the other direction to meet the main highway, say that that portion is impassable, and that the way over defendants' land is their only means of access to and from their property.

The court awarded a temporary injunction, the defendants answered denying the material averments of plaintiffs' bill, and, after the taking of testimony, the court entered its decree on May 21, 1954, perpetuating such injunction, from which decree this Court granted an appeal on November 8, 1954.

In support of their various allegations, the plaintiffs offered as exhibits a deed from Robert Brooke, Governor of Virginia, to Wilson Cary Nicholas, dated June 25, 1795, for 500,000 acres, which includes the area in question, apparently for the purpose of showing derivation from a common source; a deed, 1901, from Burgess to Wimmer, defendants remote predecessor in title, which recites: "Beginning at the Turnpike road on the top of Brushy Ridge, thence down said road south direction to a hickory inside of the road, thence a straight line to Mc-

Claugherty's line, leaving out the old road, thence * * *.";
a deed, 1914, from Wimmer to Woolwine, defendant's
predecessor in title, embracing 75 acres, reciting: "Be-
ginning on a black jack on red oak on the west side of the
Raleigh Turnpike; thence a south west course with said
turnpike crossing a branch to a double chestnut saplings
at the intersection of a farm road; * * *." a deed, 1945,
Woolwine to Gillenwater, embracing 25 acres, reciting:
"* * * to a stake at the foot of the bank by a fence and
on the West side of the old Raleigh and Gracen Turnpike;
thence running along the side of said Pike * * *."; a deed,
1946, from Gillespie to Hubbard, one of the plantiffs, re-
citing: "Beginning at the intersection of the public road
* * *."; and a deed, 1948, from Gillespie to Collins, one of
the plaintiffs, which recites: "Beginning at 2 white oaks
at the edge of a country road which is used as a public
road by those desiring to do so; * * *."

Plaintiffs also offered the testimony of eleven witnesses
who testified substantially that: the road has been con-
tinually used by the public for from 29 to 60 years; that
13 families, including 24 school children, live along the
road and use it for ingress and egress; that the road is
not part of the old turnpike; that the road originally
went above its present location, then was changed and
went across the land of defendants; that the road origin-
ally went to the home of one Thompson; and that draw
bars and gates were placed across the road at one time,
whereupon, suit was threatened, and that the parties
agreed that plaintiffs' predecessors could use the road
on condition that the gates be kept closed.

Defendants' witnesses testified also to the effect that
the original road was above the present location; that a
number of families use the road; and that there has been
considerable interference with their use of the road.
Woolwine, defendants' predecessor in title, testified that
at the time he purchased the property, (1914), only a
small path led through the woods, and that he cleared the
present roadway; that 27 years previously, he had ob-
jected to the public use of the road, and had put in draw-

bars, and later permitted some of the parties to build gates; that gates or drawbars had been across the road for approximately 37 years; that, at one time, suit was threatened, and a compromise effected whereby he permitted the people to pass through on condition that the gates would be kept closed; and that those who passed through passed with his consent on that condition.

As heretofore stated, the trial court found that the "allegations of the bill are fully sustained and that the plaintiff's have acquired a permanent right of way across the lands of the defendant", and perpetuated the injunction restraining defendants from obstructing the road or interfering in anyway with its use.

The law applicable to the issues raised upon this appeal is well settled in this jurisdiction. In *Talbott* v. *King,* 32 W. Va. 6, 9 S. E. 48, this Court held that the mere user of a road will not make it a public road, even though such use is with the knowledge and consent of the owners of the land, unless the user is accompanied either by an order of the County Court in recognizing it in some way as a road, or by maintenance by such court, and an uninterrupted line of decisions is to the same effect. *Boyd, et al.* v. *Woolwine, et al.,* 40 W. Va. 282, 21 S. E. 1020; *Yates* v. *West Grafton,* 33 W. Va. 507, 11 S. E. 8; *Dicken* v. *Liverpool Salt & Coal Co.,* 41 W. Va. 511, 23 S. E. 582; *Hicks* v. *City of Bluefield,* 86 W. Va. 367, 103 S. E. 323; *Zirkle* v. *City of Elkins,* 93 W. Va. 39, 115 S. E. 875; *Rose, et al,* v. *Fisher, et al.,* 130 W. Va. 53, 42 S. E. 2d. 249; and *Holland, et al.* v. *Flanagan,* 139 W. Va. 884, 81 S. E. 2d. 908.

Likewise, it is well established that: "The open, continuous and uninterrupted use of a road over the land of another, under *bona fide* claim of right, and without objection from the owner, for a period of ten years, creates in the user of such road a right by prescription to the continued use thereof." Pt. 2 Syl., *Post* v. *Wallace, et al.,* 119 W. Va. 132, 192 S. E. 112. *Hall* v. *Backus,* 92 W. Va. 155, 114 S. E. 449; *Foreman* v. *Greenburg,* 88 W. Va. 376,

106 S. E. 876; *Staggers* v. *Hines,* 87 W. Va. 65, 104 S. E. 768; *Roberts* v. *Ward,* 85 W. Va. 474, 102 S. E. 96; and *Walton* v. *Knight,* 62 W. Va. 223, 58 S. E. 1025.

There is no evidence that this road was ever accepted as a public road by the County Court of Mercer County or the State Road Commission. The only evidence, as to the possible public maintenance of the road, was the statement of the witness Blackburn, an employee of the State Road Commission, that two years prior to the trial he "ran a scraper over the road from the church located thereon to U. S. Route 19-21; that he received compensation from the State Road Commission for his work on this road * * *." However, this witness filed an affidavit with the court, subsequent to the taking of his testimony, in which he denied receiving compensation for the work he did on the road, or that the work was authorized by the State Road Commission. We have not considered this affidavit, however, in view of its submission at a time when the plaintiffs did not have an opportunity to cross-examine the affiant. However, assuming his original testimony to be correct, such act would not have been sufficient to constitute an acceptance of the road, assuming further that there was an offer to dedicate by the defendants. *Holland, et al.* v. *Flanagan, supra.*

There was abundant testimony from which the trial court could have found that the plaintiffs had acquired a private right of way over the land of the defendants by prescription. The only unusual circumstance in that regard presented by this record is the occurrence 26 years prior to the bringing of this suit, between the predecessors in title of the plaintiffs and the predecessors in title of the defendants, by which the latter objected to the use of this road by the former, and litigation being threatened, a compromise was effected. The evidence shows that the compromise was to the effect that the defendants' predecessors in title would remove bars which obstructed the road upon condition that plaintiffs' predecessors in title would construct gates and keep such gates closed at times when they were not being used for passage by those

entitled to go upon the road. This condition apparently prevailed from 1927 until a short time before this suit was brought in 1953.

The final decree of the trial court perpetually enjoined and restrained the defendants "from obstructing said road and right of way with gates, bars or otherwise." Furthermore, the trial court found, as heretofore stated, that the "allegations of the bill are fully sustained and that the plaintiffs have acquired a permanent right of way across the lands of the defendants."

Plaintiffs' amended bill of complaint prays that this road be decreed to be a public road, and that the defendants be required to move their fences back 15 feet from the center line so as to allow 30 feet for the roadway width. The broad language of the court's decree would apparently grant all of the relief sought by the plaintiffs. This Court finds that the evidence is insufficient to warrant a finding by the trial court that the road in question was a public road. This Court does find, however, that the evidence clearly showed that the plaintiffs had established a prescriptive right to use this roadway by continuous use for a period of more than 10 years. In 1 Elliott, Roads and Streets, Third Edition, § 193, the author states: "If the right to the way depends solely upon user, then the width of the way or the extent of the servitude is measured by the character of the user, for the easement cannot be broader than the user; * * *." Although further statements in this section, with citation of authority in the notes, indicate that a different rule may be in effect elsewhere, there is no question as to the rule in this jurisdiction.

In *Staggers* v. *Hines, supra,* there is this statement: "It is well settled that a way acquired by prescription has its limitations. If acquired for one purpose, it cannot be broadened or diverted to another; and its character and extent are ascertainable and determinable by the use made of it during the period of prescription. * * *" This evidence clearly establishes that the way and its user was

agreed upon by plaintiffs' and defendants' predecessors in title in 1927, and that such use continued until 1953.

Delay in the assertion of a right may operate in equity as evidence of assent, acquiescence or waiver unless satisfactorily explained. There was no reasonable or satisfactorily explanation for the delay by the plaintiffs, and their predecessors in title, in the assertion of their rights, if any, beyond the use established by them of this road during the 26 years immediately preceding the bringing of this suit. This Court finds that the prescriptive right established cannot go beyond the user for that period of years. Therefore, this cause will be remanded to the Circuit Court of Mercer County for the entry of a modified decree in conformity with the views expressed in this opinion, and for the ascertainment by survey, or otherwise, if necessary, of the way established by prescription over the land of the defendants by the plaintiffs prior to the entry of a final, modified decree.

*Affirmed in part;*
*reversed in part;*
*and remanded.*