CHARLES L. BAKER

*v.*

RAY HAMILTON AND SALLY HAMILTON

(No. 11014)

Submitted May 5, 1959.        Decided June 16, 1959.

BERRY, JUDGE, not participating.

*Crockett, Tutwiler & Crockett,* for appellants.

*L. R. Morgan, Sidney L. Christie,* for appellee.

HAYMOND, JUDGE:

This is a suit in equity instituted in the Circuit Court of McDowell County in July 1956, in which the plaintiff, Charles L. Baker, the owner of an undivided one-half interest in fee simple in a tract of twenty two acres and the occupant of the dwelling upon it in that county, seeks to enjoin the defendants, Ray Hamilton and Sally Hamilton, from hauling coal in trucks upon and using a narrow and unimproved road located upon the land of the plaintiff. The road in question, sometimes referred to as the Turkey Branch Road, extends from a public highway for a distance of approximately one mile along and near a small stream known as Turkey Creek or Turkey Branch. By decree entered May 15, 1958, the circuit court permanently enjoined and restrained the defendants from hauling coal in trucks on and using the road through the land of the plaintiff and entered judgment for costs against the defendants. From this decree this Court granted this appeal and supersedeas on September 22, 1958, upon the application of the defendants.

The plaintiff contends that the road in question is a private road and that the defendants are not entitled to use it to travel upon and over his land. On the contrary the defendants insist that the road has been used by the public continuously for a period of more than ten years before the institution of this suit and that public moneys and labor have been expended on it and in consequence it is a public road by virtue of Section 3, Article 1, Chapter 17, Code, 1931, which provides in part that "Any road shall be conclusively presumed to have been established when it has been used by the public for a period of ten

years or more, and public moneys or labor have been expended thereon, whether there be any record of its conveyance, dedication or appropriation to public use or not."

As the evidence does not show that the defendants have a right of way of necessity or have acquired an easement by grant or prescription over the land of the plaintiff, the sole question presented for decision is whether the road is a private road or a public road.

Upon the bill of complaint of the plaintiff and its exhibits and the answer of the defendants the circuit court referred the case to a commissioner in chancery to determine and report upon the question, among other questions which are not material to the decision of this case, whether the road was a public road or a private road which the defendants were entitled to use in the operation of their trucks for the transportation of coal over the land of the plaintiff.

Fourteen witnesses testified before the commissioner in behalf of the plaintiff and twelve witnesses testified before the commissioner in behalf of the defendants. The testimony of most of these witnesses was that the road had been used for various periods which together totaled from forty to fifty years by the public and by a small number of persons through whose property the road extended, and this evidence is sufficient to establish its use by the public for a period of more than ten years.

As to the expenditure of public moneys and the performance of public labor numerous witnesses who either knew the road or lived near it for periods of several years at various times, testified that to their knowledge no public moneys had been expended and no public labor had been performed on the road.

One witness produced by the plaintiff, who from 1941 to 1951 owned the property now owned by the plaintiff and who conveyed it to him, testified that on one or two occasions there was a scraper on the road but that he did not know why or by whose authority it was there or what use was made of the scraper. Another witness for

the plaintiff, an employee of the State Road Commission for a period of twenty one years and a foreman since 1944, testified that the road was not shown on any map or as part of the road system and that he was never instructed by his superiors to repair or maintain the road but that a grader was used on the road once or twice, perhaps three times, and that it was there at the request of people residing along the road. He did not, but some of his men did, operate the grader. He did not charge the work to that road or describe the work done by the grader. Another witness for the plaintiff, a grandson of a former owner of the property of the plaintiff, on cross-examination stated that on one occasion a scraper came up the road to scrape it but that his grandfather stopped those in charge and would not let them scrape the road. He did not know who sent the scraper or why it was sent. Another witness for the plaintiff testified that once between 1947 and 1956 when some people requested it, a scraper was on the road for about two hours and tore out some rocks at property along the road and that the wife of the property owner stopped those in charge of the scraper and told them to go back and not tear up the road.

One witness produced by the defendants testified that the road was scraped once each year from 1933 to 1936, that it was also scraped practically every year for six or eight years, and that this was done by Mathias Cantrall. Cantrall, an employee of the State Road Commission who lived in McDowell County, did not testify, and the foregoing testimony of the witness was contradicted by a witness for the plaintiff on rebuttal who owned the land of the plaintiff from 1915 to 1939. He testified that he did not see any work done on the road by the County Court or the State Road Commission and that Cantrall did not scrape the road at any time during that period. Another witness for the defendants, an employee of the State Road Commission from 1941 to 1947, testified that he went on the road twice with a pull tractor and a grader; and a third witness for the defendants stated on cross-examination that a scraper had been on the road

on one or two occasions. Another witness for the defendants testified that at one time he saw a scraper at work on the road below the property of the plaintiff.

Two witnesses for the defendants also testified that during the activities of the WPA and as employees of that federal governmental agency they were engaged in work on a public highway near the Turkey Branch Road; that they traveled that road with trucks to obtain stone for use on the public highway; and that to travel the Turkey Branch Road it was necessary to use some of the rocks to fill holes on that road and that they improved it to that extent for that purpose.

It appears from the testimony that the defendants became the owners of a tract of land on Turkey Creek above the land of the plaintiff in February 1956, and began hauling coal from that land in April of that year and continued to do so until the issuance of the injunction. There is a strip of land owned by other persons between the land of the plaintiff and the land of the defendants; and in order to transport coal from the land of the defendants to the Turkey Branch Road it was necessary for the defendants to obtain a right of way over that strip of land. By deed dated January 30, 1956, the owners of the strip of land granted the defendant Ray Hamilton an easement thirty feet wide and three hundred thirty feet long upon and over the strip of land to a private road and that defendant agreed to keep the private road leading to the easement in proper repair at all times. For this easement he offered to pay the sum of one thousand dollars or five cents a ton for coal hauled over the easement, and the deed for the easement recites a consideration of one dollar and other valuable consideration, the payment of all which is acknowledged by the grantors. According to the provisions of the deed the private road with which the easement connects and which the defendant Ray Hamilton agreed to keep in proper state of repair is manifestly the Turkey Branch Road; and the purchase of the easement to connect with that road and the reference to it in the deed as a private road

indicate that the defendant Ray Hamilton, a party to the deed, when it was executed in January 1956, regarded the Turkey Branch Road as a private rather than a public road.

Upon the foregoing evidence the commissioner found and reported that "the evidence of the more or less casual scraping done by the WPA and the State Road Commission employees, in the absence of other conduct on the part of proper authorities of the State indicating an acceptance of a dedication, is not sufficient to show that a public road has been established by use of the road for ten years or more and the expenditure of public moneys or labor thereon."

The defendants filed exceptions to the report of the commissioner on the ground that he should have found, from the evidence, that the road in question was a public road. The circuit court overruled the exceptions and confirmed the report of the commissioner by the final decree of May 15, 1958.

It is settled by many decisions of this Court that the findings of a commissioner in chancery, on questions of fact, should generally be sustained unless not warranted by any reasonable view of the evidence and that such findings are entitled to peculiar weight in an appellate court when they have been confirmed by the decree from which an appeal has been granted. *Harwood* v. *Harwood*, 112 W. Va. 344, 164 S. E. 290; *Darby* v. *Morrison*, 112 W. Va. 167, 163 S. E. 819; *Browning* v. *Browning*, 108 W. Va. 81, 150 S. E. 233; *Vaughan* v. *Vaughan*, 101 W. Va. 561, 133 S. E. 158; *York, Admr.* v. *Meek*, 96 W. Va. 427, 123 S. E. 225; *McDermitt* v. *Moore*, 87 W. Va. 300, 104 S. E. 744; *Kane and Keyser Hardware Company* v. *Cobb*, 79 W. Va. 587, 91 S. E. 454; *Baker* v. *Jackson*, 65 W. Va. 282, 64 S. E. 32.

The activities of the WPA on the Turkey Branch Road were for the purpose of obtaining material for use on a recognized public highway and were not for the purpose of repairing and maintaining the Turkey Branch Road.

The acts of its employees in filling holes on that road were incidental to their use of the road to obtain and haul rock to be used on another road which was a recognized public highway and the work of filling the holes was necessary to enable them to use the road in hauling rock and was performed for that purpose only. There is no evidence that any acts performed by the WPA were for the purpose of repairing and maintaining the Turkey Branch Road or that its employees were paid for work done for that purpose.

The evidence likewise fails to show that the use of a scraper or a grader on the Turkey Branch Road was other than an occasional or a sporadic act performed as an accommodation to persons residing on land located along the road and not for the purpose of maintaining or repairing the road as a public road. On the contrary the evidence shows that no official or agency empowered to maintain, repair or accept a road as a public highway ever at any time authorized any agent or employee to use or operate the scraper or other machinery on the Turkey Branch Road; and the evidence also shows that no expenditure of public money was ever authorized or made for that purpose. The acts of the persons who used the machines on the Turkey Branch Road were merely acts of gratuitous accommodation to the residents of that section and not the acts of any public agency or official vested with authority to maintain, repair or accept a road as a public highway.

Upon the evidence introduced before the commissioner the action of the circuit court in confirming the report was clearly right and the findings of the commissioner on the factual questions whether public moneys were expended or public labor was performed upon the Turkey Branch Road and whether that road was a public road, being sustained by the evidence, will not be disturbed by this Court on this appeal.

Mere use will not make a road a public road although such use is with the knowledge and consent of the land-

owners, in the absence of some action amounting to an acceptance of the road as such by public authorities. *Monk* v. *Gillenwater,* 141 W. Va. 27, 87 S. E. 2d 537; *Holland* v. *Flanagan,* 139 W. Va. 884, 81 S. E. 2d 908. In the *Monk* case, discussing the question of public maintenance of a road, this Court said: "There is no evidence that this road was ever accepted as a public road by the County Court of Mercer County or the State Road Commission. The only evidence, as to the possible public maintenance of the road, was the statement of the witness Blackburn, an employee of the State Road Commission, that two years prior to the trial he 'ran a scraper over the road from the church located thereon to U. S. Route 19-21; that he received compensation from the State Road Commission for his work on this road * * *.' However, this witness filed an affidavit with the court, subsequent to the taking of his testimony, in which he denied receiving compensation for the work he did on the road, or that the work was authorized by the State Road Commission. We have not considered this affidavit, however, in view of its submission at a time when the plaintiffs did not have an opportunity to cross-examine the affiant. However, assuming his original testimony to be correct, such act would not have been sufficient to constitute an acceptance of the road, assuming further that there was an offer to dedicate by the defendants. *Holland, et al.* v. *Flanagan,* supra." The evidence indicated in the foregoing quotation concerning public maintenance of the road together with the evidence that the road had been continuously used by the public for more than ten years was declared to be insufficint to warrant a finding that the road was a public road.

In order that a road, by virtue of Section 3, Article 1, Chapter 17, Code, 1931, shall be conclusively presumed to be established as a public road, it must have been used by the public for a period of ten years or more and public moneys or labor, duly authorized by a public agency or official empowered to maintain, repair or accept such road, must be expended on it; and the occasional ex-

penditure of public money or the occasional performance of public labor on such road, which is not so authorized, even though such road has been used by the public for ten years or more, does not satisfy the requirements of the statute or render effective the statutory presumption of its establishment as a public road. It would indeed be a strange and extremely dangerous doctrine if the occasional acts of employees of the State Road Commission, or of any other public authority, in performing labor on a private way without being authorized so to do, could convert a private way of a property owner, when coupled with mere user by the public, into a public road and in that manner deprive the owner of a vested property right without just compensation and obligate public authorities to maintain what in fact would be private roads as public roads beyond the limit of their ability to do so. The statute can not be used for any such purpose and it is obvious that such was not the intention of the Legislature in enacting it. As it is evident that the work performed on the Turkey Branch Road by employees of the State Road Commission and the money paid them for such work were not authorized by the commission or any official responsible for its maintenance, it has not been established as a public road.

The final decree of the circuit court which confirmed the finding of the commissioner that the Turkey Branch Road has not been established as a public road and awarded an injunction against the defendants is affirmed.

*Affirmed.*