379 S.E.2d 488

**Edward QUIGLEY and Mildred Quigley, his wife; et al.**

v.

**Jacqueline Joyce ATKINS and Dennis Rupert Atkins, III.**

No. 18281.

Supreme Court of Appeals of West Virginia.

March 27, 1989.

---

Fred B. Westfall, Jr., Huddleston, Bolen, Beatty, Porter & Copen, Huntington, for appellants.

Nelson R. Bickley, Bickley, Jacobs & Barkus, Charleston, for appellees.

PER CURIAM:

This is an appeal by Jacqueline Joyce Atkins and Dennis Rupert Atkins, III, from a decision rendered by the Circuit Court of Kanawha County in a boundary line dispute. The dispute had been referred to a special commissioner for determination of the location of a boundary between two parcels of property. The circuit court, af-

ter receiving the commissioner's findings and conclusions of law, adopted those findings and conclusions and essentially held that the boundary line in question ran where the appellees claimed it ran. In the present proceeding, the appellants claim that the appellees had not met their burden of proving the location of the boundary line and that the trial court, in view of the nature of the evidence, erred in adopting the commissioner's findings and conclusions. The appellants also claim that the trial court erred in not holding that they had acquired certain areas enclosed by the disputed boundary by adverse possession. After reviewing the record this Court cannot conclude that the trial court committed reversible error. Accordingly, the judgment of the Circuit Court of Kanawha County is affirmed.

The appellants and the appellees own adjoining parcels of property located in Elk District, Kanawha County, West Virginia. The appellants inherited their parcel from Stella Jarrett in 1983. Stella Jarrett and her husband had purchased the tract, along with three others, from G.E. and Ruby Gibson on April 13, 1946. The deed from the Gibsons to the Jarretts contained only an imprecise description of the property which passed to the appellants.[1]

The property owned by the appellees had previously belonged to Roy M. Blizzard, Jr. and his wife, Mary. The Blizzards had acquired the tract, along with three other tracts, from Wes Jones by deed dated June 30, 1972. That deed, like the deed in the appellants' chain, contained relatively imprecise descriptions of the tracts conveyed.[2]

---

1. The deed describing the property which eventually passed to the appellants described the property as follows:

Lying on the waters of Aarons Fork of Little Sandy, Elk District, Kanawha County, West Virginia; beginning at a black oak coerner; thence with Koontz line to the top of a point; thence down the point to a rock near the branch; thence down a lane to the County Road; thence down the County Road to a stake; thence a straight line back to the Bruen line crossing the spring-tail about ten (10) feet below the spring; thence with A.M. Bruen's line to the beginning, containing 10 acres, more or less.

2. The parties do not agree as to which of the tracts conveyed to the Blizzards was ultimately conveyed to the appellees. The appellants claim that Tract No. One conveyed by Wes Jones to the Blizzards was the tract which the appellees ultimately claimed. The appellees claim that their parcel was Tract No. Four in the transfer to the Blizzards.

Tract No. One in the transfer from Wes Jones to the Blizzards is described as follows:

BEING 26¼ acres situated on the waters of Aarons Fork of Little Sandy in Elk District, Kanawha County, West Virginia, being more fully described as follows, to-wit: BEGINNING at a stake in the county road in line of

After the Blizzards acquired the Wes Jones tracts, they retained Ralph "Miami" Adkins to survey and prepare a plat of the property. This was required as a condition for obtaining a mortgage. Mr. Adkins performed the survey and drew up a technical description of the property, including the property subsequently conveyed to the appellees. In their later deed to the appellees dated June 15, 1976, the Blizzards did not use the imprecise description of the property contained in their prior chain of title, but rather the technical description drawn up by Ralph "Miami" Adkins.[3]

After the appellees acquired the Blizzard tract, a dispute arose between them and the appellants over the location of the boundary line. The appellees instituted the present proceeding to resolve that dispute.

As previously stated, the Circuit Court of Kanawha County referred the dispute to a special commissioner, who took extensive evidence on the location of the boundary line.

In the course of the proceedings, the appellees, who were the plaintiffs, adduced the testimony of their predecessor in interest, Roy M. Blizzard, Jr. Mr. Blizzard testified regarding Ralph "Miami" Adkins'

survey of the property later transferred to the appellees. He indicated that he assisted Mr. Adkins in performing the survey and that the appellants' predecessor in title, Mrs. Jarrett, also assisted. He specifically indicated that Mrs. Jarrett had pointed out a certain boundary post with full knowledge that a survey was being conducted. From the post an old fence line was located. Mr. Blizzard further indicated that in the course of Mr. Adkins' survey a large rock at the intersection of two lines was located with Mrs. Jarrett's assistance.

The appellees also called as a hostile witness Ralph "Miami" Adkins, who had performed the 1973 survey. He indicated that he had surveyed and mapped the parcel by field survey and tax map.

An additional witness called by the appellees was another surveyor, Dana Keith Clendenin, who indicated that the boundary line in question ran where the appellees claimed it ran. He based his conclusions on the findings of Ralph "Miami" Adkins. He indicated that what Mr. Adkins had tried to do was to take the description contained in the deed to the Blizzards and

---

Walls land; thence running up point 40 rods to stake corner; thence on up the point 35 rods to a Locus Bush; thence South direction 32 rods with Harrison Walls line to a stake corner; thence leaving Walls line in an East direction down the 25 rods to a stake; thence 32 rods to the county road; thence up the road a North direction 25 rods to a Walnut tree; thence across Aarons Fork East 43 rods to K.Y. and K.Z. the dividing line between Bruin and Lewis Survey; thence with two lines the same down the hill West direction to a county road 43 rods; thence up the county North 38 rods to the place of beginning; ... Tract No. Four is a little more precisely described as follows:

That certain lot or parcel of land situate on the waters of Leatherwood Creek of Poca River in Poca District, Kanawha County, West Virginia, bounded as follows, to-wit: BEGINNING at a stone in a line of D.M. Jarrett's land S. 33° W. 9½ poles to a stone; S. 14° W. 30 poles to a stone; S. 60½° E. 22 poles to a Dogwood, corner to B. Fogarty and Addison Todd survey and with the Todd line N. 15° E. 38 poles to a stake and pointers; N. 28° E. 25 poles to a Beech; S. 83° W. 26 poles to the place of beginning, containing ten (10) acres, more or less.

3. That description identified the property transferred to the appellees as follows:

BEGINNING at a point on Arrons Fork Road which said point is located that the northeasterly intersection of that certain tract designated as Parcel "B" and Parcel "C" on the map above referred to and thence S. 8° 40' W. 115 feet to a point in said road; thence S. 6° 08' W. 180 feet to a point; thence S. 1° 55' W. 172 feet to a point in said road; thence S. 6° 00' W. 312 feet to a point in said road; thence S. 67° 30' W. a distance of 110 feet more or less to an iron pin; thence N. 3° 15' W. 250 feet to an iron pin; thence N. 82° 30' W. 158 feet to a point; thence N. 33° 30' W. 780 feet to a point being the extreme western point in the boundary of the tract intended to be conveyed; thence S. 80° 40' E. 715 feet to the point of beginning and being a part of Parcel "C" as the same is shown and designated upon the afore described map or plat and being a part of the same property conveyed unto the parties of the first part herein by Deed dated the 11th day of September, 1972, from the heirs of W.F. Jones, and recorded in the Office of the Clerk of the County Court of Kanawha County, West Virginia, in Deed Book # 1665 at page # 646 ...

transform it from a monuments description into a metes and bounds description. He further indicated that a critical boundary in dispute was, in the ancient deeds to the appellees property, described as the county road that was in existence prior to 1930. He had been unable to locate this old county road during his survey.

Mr. Clendenin testified that he was able to locate fences or remnants of fences along certain of his survey lines and that he also located certain monuments.

The appellants, as defendants below, called Ralph Calhoun, a surveyor, as their witness. Mr. Calhoun indicated that he had surveyed the boundaries to the appellants' property in 1983. He indicated that he had consulted both the deeds of the present as well as prior owners. He testified that he was able to find various monuments contained in the descriptions in those deeds. He also found remnants of the county road mentioned in the ancient deeds, and those remnants indicated that the road actually went into a creek located in the area. From his survey he prepared a map which showed that the appellants owned the area which was in dispute.

The appellants also called as witnesses several individuals who had been residents of the area for years. These individuals were familiar with the county road mentioned in the ancient deed descriptions. Clovis Kidd, who had travelled in the area for over fifty-five years, testified that the old county road did run into the creek and that the road generally followed the creek line. Edward E. Moore, another resident, pointed out the point at which the county road went into the creek and where it exited from the creek.

In addition to presenting evidence as to the location of the boundary line, the appellants, through the evidence of several witnesses, suggested that Owen David Jarrett, their predecessor in interest, had farmed and maintained the disputed area from 1946 to 1963, and that after 1963 Mr. Jarrett's widow, Stella Jarrett, had cut the grass in the area in dispute and maintained it until she died in 1983. They took the position that because of this they owned the area in dispute by adverse possession, if not by record title.

At the conclusion of the hearing, the special commissioner ruled that the boundary line ran where the appellees claimed it ran. The commissioner, however, found that the appellants had established an easement for a gas line over the property and an easement for a right of way and turn around on the property in dispute. The commissioner also found that the appellants had failed to establish adverse possession to the area in dispute. Specifically, the commissioner found that although the appellants had shown that they and their predecessors had utilized the property sporadically for in excess of ten years, the appellees during the same period of time, and their predecessors, had likewise used it. He concluded that the appellants had failed to show that their possession had been exclusive and continuous for ten years.

After receiving the special commissioner's findings and conclusions, the Circuit Court of Kanawha County, by order entered on December 10, 1986, adopted the commissioner's findings in toto. It is from that order that the appellants now appeal.

In syllabus point 1 of *Baker v. Hamilton*, 144 W.Va. 575, 109 S.E.2d 27 (1959), this Court stated that:

> The findings of a commissioner in chancery, on questions of fact, should generally be sustained unless not warranted by any reasonable view of the evidence and such findings are entitled to peculiar weight in an appellate court when they have been confirmed by the decree from which an appeal has been granted.

*See also Gardner v. Bailey*, 128 W.Va. 331, 36 S.E.2d 215 (1945) and *Darby v. Morrison*, 112 W.Va. 167, 163 S.E. 819 (1932).

In the case presently before the Court, the appellants' first assignments of error are that the trial court erred in adopting the findings of fact, conclusions of law, and recommendations of the special commissioner as to the location of the boundary line in dispute.

A review of the record shows that two licensed professional surveyors, Ralph "Miami" Adkins and Dana Keith Clendenin, both concluded that the boundary lines in question ran where the appellees claimed that they ran. Mr. Adkins, who testified as a witness hostile to the appellees, testified that he had arrived at his survey lines as a result of field survey and tax map. He also indicated that such procedure was used because of the general nature of the information relating to the location of the lines. Mr. Clendenin reached the same conclusions that Mr. Adkins reached, and when specifically asked whether he had examined any prior surveys other than that of Mr. Adkins in trying to determine any particular points or common lines along the boundaries in dispute, he testified that he had done research and that he could specifically recall examining the deed of M.B. Jones.

There was also evidence that Mr. Adkins, at the time of conducting his survey, located a large rock located at the intersection of two lines on the boundary between the parties' tracts, and that Mrs. Jarrett, the appellants' predecessor had assisted in the survey. There is also some indication that Mr. Adkins located a post at another point on the survey. The appellants' surveyor, on the other hand, Ralph Calhoun, testified that he was able to find various monuments and also the remnants of a county road mentioned in the ancient deeds. His survey conflicted with those prepared by Surveyors Adkins and Clendenin.

An examination of the evidence adduced shows that the surveys of both parties were supported by record references and by remnants of monuments on the ground. Neither survey was clearly established at all points by clear physical evidence.

As indicated in *Baker v. Hamilton, supra,* the findings of a commissioner in chancery should generally be sustained unless they are not warranted by any reasonable view of the evidence. In the present case, given the fact there was some evidentiary basis for the conclusions of the appellees' surveyors and that the appellants' predecessor in interest assisted one of those surveyors, it does not appear that the commissioner's conclusions as to the location of the boundary line were unwarranted by a reasonable view of the evidence or that the circuit court erred in adopting those conclusions.

■ The appellants also assert that the trial court erred in finding that the gas pipeline mentioned in the proceedings was located on the appellees' property, and thus, by implication, that the boundary line claimed by the appellees was the correct boundary line.

In the course of the trial, the appellee, Edward Quigley, testified that the gas pipeline was located inside his property line by fifteen to twenty feet until it crossed the appellants' property line at the lower end. On the map prepared by the appellees' surveyor, Mr. Clendenin, the gas line was shown as being located on the appellees' parcel. The appellants claim that the appellees' surveyor, Mr. Clendenin, did not testify as to the location of the pipeline and that their surveyor, Mr. Calhoun, indicated that the pipeline was located on their property. Under the circumstances, the appellants claim that the trial court erred in ruling that the pipeline was located on the appellees' property.

The appellants essentially argue that the only evidence supporting the appellees' claim was the testimony of appellee Edward Quigley. A review of the record, however, indicates that this argument is without merit since the survey prepared by Mr. Clendenin rather clearly showed the pipeline on the appellees' property and his survey, as well as his testimony, was before the special commissioner.

■ Lastly, the appellants claim that the trial court erred in failing to hold that they had acquired title to disputed areas by adverse possession.

In syllabus point 3 of *Somon v. Murphy Fabrication and Erection Co.,* 160 W.Va. 84, 232 S.E.2d 524 (1977), this Court stated:

One who seeks to assert title to a tract of land under the doctrine of adverse possession must prove each of the following elements for the requisite statutory peri-

od: (1) That he has held the tract adversely or hostilely; (2) That the possession has been actual; (3) That it has been open and notorious (sometimes stated in the cases as visible and notorious); (4) That possession has been exclusive; (5) That possession has been continuous; (6) That possession has been under claim of title or color of title.

The appellants introduced evidence showing that Owen David Jarrett, their predecessor in interest, had farmed and maintained the disputed area from 1946 to 1963 and that after 1963 Mr. Jarrett's widow, Stella Jarrett, had cut the grass in the area in dispute and maintained it until she died in 1983. They assert that these actions, in conjunction with their claim to the property, were sufficient to establish adverse possession.

To contradict the appellants' evidence, the appellees adduced the testimony of Mr. Theodore E. Tignor, a resident of the area for forty-two years, who testified that he could not recall seeing a garden near the creek in the disputed area as alleged by the appellants. The appellee, Edward Quigley, himself testified that since 1976 the appellants and their predecessors in title had not maintained a garden in the disputed area. Further testimony adduced by the appellees suggested that any possession by the appellants' predecessors was not so hostile as to inform the world at large of their hostile possession.

Obviously the evidence on possession was conflicting, as was the evidence on the nature of its continuousness and hostility. Under the circumstances, there was sufficient doubt to support the conclusions of the commissioner and the circuit court that the appellants had failed to establish ownership under the test set forth in *Somon v. Murphy Fabrication and Erection Co.,* supra.

For the reasons set forth, the judgment of the Circuit Court of Kanawha County is affirmed.

Affirmed.