**CSX TRANSPORTATION, INC., Plaintiff,**

v.

**MADISON GROUP, INC., et al., Defendants.**

No. CIV. A. 2:98–0140.

United States District Court,
S.D. West Virginia,
Charleston Division.

March 22, 1999.

Andrew S. Zettle, Huddleston, Bolen, Beatty, Porter & Copen, Huntington, WV, for plaintiff.

Jerry W. Cook, Cook & Cook, Madison, WV, for defendants.

## *MEMORANDUM OPINION AND ORDER*

HADEN, Chief Judge.

Pending is Plaintiff's motion for summary judgment, which has been fully briefed. After careful consideration, the Court **GRANTS** the motion.

### I. FACTUAL BACKGROUND

Plaintiff CSX Transportation, Inc. ("CSXT") operates a railway line that lies along the Spruce Fork of the Little Coal River in the vicinity of Madison, Boone County, West Virginia. CSXT assumed ownership of the land upon which the track lies in a condemnation proceeding in 1906. CSXT owns 33⅓ feet on each side of the center of the railroad track.

In 1906, a road crossed Spruce Fork by means of a low-water crossing and proceeded to intersect an area known as Miller Hill. At the time, the road was the principal route from Madison to Logan. It was maintained as a public road.

In 1933 the West Virginia Legislature authorized a statutory system of state roads under the jurisdiction of the State. Highway Commission. Because the statutory scheme replaced the jurisdiction of county courts over roads, the Highway Commission prepared a formal inventory of the state roads that would be adopted into its jurisdiction. Neither the preliminary map nor the final 1937 map included the Madison to Logan road. In 1996 CSXT subsequently removed the road crossing from its tracks and right of way.

Defendants Douglas White and A.T. Miller, Jr. own land on the area known as Miller Hill. This property was accessed by the old Madison to Logan road.[1] With other land owners in the area, White and Miller pooled funds to build a bridge to span Spruce Fork, to gain access to Miller Hill without using the low-water crossing. After an unsuccessful first attempt, they built a second bridge that stands today at a location west from the low-water crossing. If one used the bridge to reach Miller Hill, the driver would cross Spruce Fork, make a sharp left turn, drive parallel to the railroad tracks, and then make a sharp right turn to cross the tracks at the location of the old Madison to Logan road.

Defendants' engineer for the project, Mustafa Kol, advised Defendants of the need to apply for and receive several permits, including one from CSXT because the proposed bridge's abutment would lie within CSXT property. Defendants were not granted a permit by CSXT.

CSXT moves for summary judgment, arguing first that Defendants unlawfully placed the bridge abutment on CSXT property; second, Defendants have no lawful right to use the old road's crossing point because the road was abandoned by the State.

Defendants argue genuine issues of material fact remain as to whether the bridge abutment is on CSXT property and whether Defendants placed fill on CSXT property. Second, they argue the cemetery's location gives them a perpetual easement and removal of the old crossing effectively denied access to the cemetery. Consequently, the bridge and fill should be allowed to remain.

## II. DISCUSSION

### A. Summary Judgment Standard

Our Court of Appeals has often stated the settled standard and shifting burdens governing the disposition of a motion for summary judgment:

Rule 56(c) requires that the district court enter judgment against a party who, "after adequate time for ... discovery fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." To prevail on a motion for summary judgment, the [movant] must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) it is entitled to judgment as a matter of law. In determining whether a genuine issue of material fact has been raised, we must construe all inferences in favor of the [nonmovant]. If, however, "the evidence is so one-sided that one party must prevail as a matter of law," we must affirm the grant of summary judgment· in that party's favor. The [nonmovant] "cannot create a genuine issue of fact through mere speculation or the building of one inference upon another." To survive [the motion], the [nonmovant] may not rest on [his] pleadings, but must demonstrate that specific, material facts exist that give rise to a genuine issue. As the *Anderson* Court explained, the "mere existence of a scin-

---

1. The road accessed other areas besides Miller Hill, including a cemetery.

tilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff[.]"

*Harleysville Mut. Ins. Co. v. Packer,* 60 F.3d 1116, 1119–20 (4th Cir.1995) (citations omitted); *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.), *cert. denied,* 513 U.S. 813, 115 S.Ct. 67, 68, 130 L.Ed.2d 24 (1994); *see also Cabro Foods, Inc. v. Wells Fargo Armored Serv. Corp.,* 962 F.Supp. 75, 77 (S.D.W.Va.1997); *Spradling v. Blackburn,* 919 F.Supp. 969, 974 (S.D.W.Va.1996).

"At bottom, the district court must determine whether the party opposing the motion for summary judgment has presented genuinely disputed facts which remain to be tried. If not, the district court may resolve the legal questions between the parties as a matter of law and enter judgment accordingly." *Thompson Everett, Inc. v. National Cable Advertising, L.P.,* 57 F.3d 1317, 1323 (4th Cir.1995).

## B. Bridge Dispute

It is undisputed that CSXT owns 33⅓ feet on either side the center of the track. Engineer Kol flagged CSXT's property line on schematics that called for steel pilings to be placed on the railroad's property. *See* Ex. 8 to Ex. E, Pl.'s Mot. Summ. J.; Kol's Depo., Ex. E at 39, *id.* At his deposition, Kol explained his notation:

> It's marked on my plans, if the railroad looked at it, "inside right-of-way, 10." This is railroad right-of-way, which is 33 feet from the center line of track.... This is something that I'm saying that you are inside of—10 feet inside of railroad right-of-way, assuming that this is still a railroad right-of-way, which is

questionable, I think. We mentioned that to Jerry [Defendants' attorney].

Kol's Depo., Ex. E at 13, *id.* Kol drafted form letters for Defendants' use to secure necessary permits, including one to the railroad seeking to "relocate the existing crossing and to perform the work within the railroad's rights of way." Ex. 5 to Ex. E, *id.* Kol testified that when he is dealing directly with the railroad, he is "very, very nervous about it" and "never do[es] anything before [he] get[s] a permit from the railroad company." Ex. E at 42, *id.*

Defendant Douglas White was also aware of CSXT's ownership of the land thirty-three and a third feet from the center of the tracks. Douglas White Depo. at 25, Ex. D, Pl.'s Mot. Summ. J. He stated placement of the bridge on CSXT property would be "improper" because they did not have permission. *Id.* at 31.

■ Defendants contest only factual issues whether the bridge actually stands on CSXT's property and whether Defendants placed the fill material on CSXT's property. As to the first issue, CSXT introduced an affidavit and supporting photos by a trained and experienced engineer, Robert Campbell, who fixes the actual position of the bridge and fill as of July 10, 1997; April 8, 1998; and September 22, 1998. This evidence demonstrates the bridge's steel supports are placed on CSXT property, which is further supported by Kol's schematics and deposition testimony.

In rebuttal, Defendants offer only a survey made in 1996, without an accompanying affidavit to support or explain the purpose of the survey.[2] The survey and photographs are not necessarily inconsistent, however. The survey may purport to show only the concrete structure of the bridge which, the photographs show, does

---

2. Defendants also contest the technique by which they argue Campbell measured thirty-three feet from the center of the track in one of his photographs. *See* Ex. F to Ex. B, Pl.'s Mot. Summ. J. As CSXT illuminates, Campbell's affidavit states the placement of the "orange end of the tape measure" marks thirty-three feet; the picture does not purport to

demonstrate the method by which an accurate measurement is made. Certainly one can understand how a person might need to resort to such a method of placement if he was both measuring and taking photos by himself. Furthermore, Defendants have not put forth their own evidence demonstrating the inaccuracy of Campbell's measurement.

not encroach upon CSXT property. Considering all the evidence and construing all inferences in favor of Defendants, they have nonetheless failed to put forward evidence upon which a jury could reasonably find for them.

As to their responsibility for placing fill on CSXT property, Defendants argue any number of persons may have placed fill on the property in question. They rely solely upon Defendant Douglas White's testimony 1) unknown third persons use the bridge despite his blockade efforts and, therefore, may have placed the fill and 2) he *heard* about a family who may have caused the City of Madison to place the fill to enable them to reach the cemetery. As our Court of Appeals has stated, a nonmovant " 'cannot create a genuine issue of fact through mere speculation or the building of one inference upon another.' " *Harleysville Mut. Ins. Co.*, 60 F.3d at 1119–20 (citations omitted). Defendants have failed to put forward evidence upon which a jury may reasonably find for them.

### C. Crossing Dispute

In their counterclaim, Defendants allege CSXT unlawfully removed the crossing that had first been created as part of the old Madison to Logan road. CSXT argues the road was abandoned by the State when it did not include it in the inventory of State roads within the jurisdiction of the State Highway Commission. Defendants do not dispute the road's exclusion. Instead, they respond only that cemetery lot owners are entitled to a "perpetual easement" and that removal of the crossing effectively denied them access to the cemetery, justifying the continued location and use of the bridge and fill.

The Supreme Court of Appeals of West Virginia has recognized that a road is not a public road unless the State has taken steps to authorize it or to treat it affirma-

tively as such. Generally, a road becomes public only through condemnation, public use along with official recognition that the road is public, or dedication. *Reger v. Wiest*, syl. pt. 2, 172 W.Va. 738, 310 S.E.2d 499 (1983); *see also State ex rel. Riddle v. Dep't of Highways*, 154 W.Va. 722, 724, 179 S.E.2d 10, 12 (1971). No one contends the road here was the subject of a condemnation proceeding or was dedicated to the public. Instead, the overriding argument is the road was once public and has continued to be used by the public.

Defendants noted the State Legislature in 1933 created a new statutory scheme, which repealed county authority over roads and gave it to the State Highway Commission. W. Va.Code § 17–10–1 (1998).

> In order that a road, by virtue of Section 3, Article 1, Chapter 17, Code, 1931, shall be conclusively presumed to be established as a public road, *it must have been used by the public for a period of ten years or more and public moneys or labor, duly authorized by a public agency or official empowered to maintain, repair or accept such road, must be expended on it;* and the occasional expenditure of public money or the occasional performance of public labor on such road, which is not so authorized, even though such road has been used by the public for ten years or more, does not satisfy the requirements of the statute or render effective the statutory presumption of its establishment as a public road.

*Baker v. Hamilton*, syl. pt. 3, 144 W.Va. 575, 109 S.E.2d 27 (1959) (emphasis added), *quoted in part in Wilson v. Seminole Coal, Inc.*, syl. pt., 175 W.Va. 518, 336 S.E.2d 30 (1985); *Miller v. Hoskinson*, syl. pt., 189 W.Va. 189, 429 S.E.2d 76 (1993).[3] To be classified as a public road, there must be ten years of public use as well as

---

**3.** CSXT relies upon *Miller v. Hoskinson*, 189 W.Va. 189, 429 S.E.2d 76 (1993), in its memoranda. The Court notes *Miller* is a per curiam opinion and, as such, cannot be relied upon as legal precedent. *See Lieving v. Hadley*, 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4 (1992).

"some recognition by a public authority or maintenance through public funds." *State Road Commission v. Oakes*, 150 W.Va. 709, 716, 149 S.E.2d 293, 298 (1966).

 Here, the road did not appear in the State highway maps of 1933, nor does it appear in the 1995 State highway map. Douglas White testified the road was not maintained and that "possibly with a four wheel drive" a person could cross the old road. White Depo. at 84–85, Ex. B, Defs.' Reply. There is no evidence to indicate the expenditure of state funds for maintenance of the road in question. Defendants fail to present either evidence or argument that the road is public, except to maintain it once was a public road under the county road system. Limited public use of the road since 1933 and the absence of public funds expended on the road's maintenance are insufficient to prove it a public road today.

Next, the Court must recognize the West Virginia Court recently re-affirmed that "a railroad is a highway dedicated to the public use." *A & M Properties, Inc. v. Norfolk Southern Corp.*, syl. pt. 2, 203 W.Va. 189, 506 S.E.2d 632 (1998). "As neither adverse possession, prescriptive easement, nor equitable estoppel may lie against a public highway, no party may establish an interest in the trackway of a railroad through any of these methods, so long as the trackway continues to be used for railroad purposes." Syl. pt. 5, *id.* Defendants do not attempt to argue that CSXT has stopped using the track for railroad purposes. Consequently, Defendants may not rely upon their use of the crossing to establish any type of easement rights.

Finally, as to the "perpetual easement" created in cemetery lot owners, the case cited by Defendants stands for a proposition different from that for which it is cited. *Sherrard v. Henry*, 88 W.Va. 315, 106 S.E. 705 (1921), addresses a lot owner's easement in the cemetery lot itself, rather than an easement of ingress and egress from the cemetery. Defendants do not allege they own lots in such cemetery, nor do they state facts sufficient to demonstrate Defendants have standing to raise the rights of lot owners. Consequently, the Court declines to address the rights, if any, of cemetery "owners."

### III. CONCLUSION

Accordingly, the Court (1) **GRANTS** summary judgment to Plaintiff; (2) **GRANTS** declaratory judgment to Plaintiff on its claim; (3) **DISMISSES WITH PREJUDICE** Defendants' counterclaim; (4) **ORDERS** Defendants to remove the bridge structures and fill from CSXT's property and restore CSXT's property to its condition prior to Defendants' extralegal occupation; and (5) **DISMISSES** the case and orders it **STRICKEN** from the docket.