CLAID POST *v.* STELLA WALLACE *et al.*

(No. 8411)

Submitted May 18, 1937. Decided June 22, 1937.

*J. Guy Allender* and *Wm. T. George,* for appellant.
*Wm. P. Samples,* for appellees.

FOX, JUDGE:

Stella Wallace and George S. Wallace complain of the action of the circuit court of Taylor County in decreeing to Claid Post a right of way over property of the appellant, Stella Wallace, to the public highway near Simpson, in said county.

Some time prior to 1903, George M. Whitescarver became the owner of a large boundary of land, known as the Davisson land, made up of different tracts, one called the Dillon farm. On October 9, 1903, he conveyed the Dillon farm to Enoch Post, and on June 15, 1909, Enoch Post conveyed to his sons, Earl Post and Claid Post, 171¾ acres thereof. These grantees agreed upon a partition of this land on December 6, 1910, and by deed of partition of that date, there was conveyed to Claid Post 50¼ acres thereof, and to Earl Post 121¾ acres. At the time of this partition, and for many years prior thereto, a right of way existed from the Dillon farm over the lands of Stephen Utterback to the public highway at Simpson. This right of way extended from the public highway through the Utterback land to the line of the Dillon farm, and from that point a road extended through a part of the Dillon farm to a house known as the Howard Davisson house, located thereon. At the time of the partition, this road was extended about 400 feet from the Howard Davisson house to a gateway left open in the division line between the Earl Post land and the Claid Post land, establishing a road and right of way over the Earl Post land, as well as the Utterback land which was continuously and openly used by Claid Post, and others in that vicinity, from that time until the month of April, 1934, when it was closed by the defendants, Stella Wallace and George S. Wallace. On August 24, 1937, Earl Post purchased from Stephen Utterback the land over which the right of way through the Utterback property passed. Earl Post died in 1931, and devised his lands to Stella Post, who afterwards intermarried with the defendant, George S. Wallace. When the appellants closed the road in April, 1934, this suit was instituted by Claid Post, and a temporary injunction awarded which, upon a final hearing of the cause, was perpetuated, from which decree this appeal is prosecuted.

During the period this right of way was being used by Claid Post, it appears that two changes were made in the location of the right of way on the ground; one at a point near the meadow on the Earl Post land; but inasmuch as

this change was made about eighteen years prior to the date when the road was closed, the lapse of time makes this change unimportant, for the reason a prescriptive right to use the new location was created after the change. The other change is one made on the Utterback land purchased by Earl Post in 1927, which seems to have been brought about by a shift in the location of a bridge in connection with the double tracking of the Baltimore & Ohio Railroad passing the point of outlet. Apparently, the change in the railroad line was made in the year 1923 and, if so, that change was made more than ten years before the road was closed. There is, however, some testimony indicating that the change was not made until after Earl Post acquired the Utterback land, but even so, the testimony predominates in favor of the contention that any change so made was made for the convenience and with the consent or acquiescence of Earl Post, thus estopping him or his successor in title from asserting the change to the point of destroying a right of outlet fully matured. The effect of the change was to locate the outlet to the public road over lands of H. B. Newlon, who is not a party to this suit, and who is not complaining of the change.

The plaintiff, in his bill, avers that he was entitled to a right of way by necessity on account of there being no outlet from his farm to the public highway, other than that now claimed by him over the Wallace land, at the time of the partition of the Dillon farm, in December, 1910. No particular stress is laid on this contention, and we do not think it can be maintained. The record discloses that George M. Whitescarver, on March 30, 1903, conveyed to one Ira J. Post a tract of 205 acres, over which he reserved a right of ingress and egress by gates to and from a tract of land owned by him, known as the Dillon land, which right was reserved to Whitescarver and to parties who might become owners of the said land. There is also some testimony to the effect that Claid Post, at the date of the partition, had a right of way over another and adjoining tract to a public road; but this right is less definite and fixed than that reserved

by Whitescarver in his deed to Post. There is evidence that the right of ingress and egress over the Ira J. Post land was used for some years, and later practically abandoned, and no reason is given why the privileges reserved in the Post deed could not have been exercised at the date of the partition deed and up to the present time. This state of facts, we think, destroys the claim that there is a right of way by necessity over the Earl Post land, and requires that the rights of Claid Post be determined on grounds other than necessity.

We think the evidence shows that the plaintiff below, Claid Post, acquired a right of way over the Wallace lands by prescription. Post himself testifies that this right of way was used, to his personal knowledge, as an outlet from the Dillon farm from the time it was conveyed by Whitescarver to Enoch Post in 1903, and that he personally used the road from the time he first acquired his interest in the land in 1909, and from that time on until it was closed. Utterback, over whose property the right of way was located until his sale to Post in 1927, also testifies to the existence of this right of way; and H. B. Newlon, whose land adjoined the Utterback land, and over which the outlet to the public road from the Wallace land as well as the Post land is now located, testifies to the same effect. All of these witnesses state that, to their knowledge, no objection was ever made by anyone to the use of this right of way, and this testimony coming from Utterback is particularly significant, as he was the owner of the property on which it was located, and was the only person who could have objected to its use. The fact that he did not object removes any question of doubt as to the nature of the right asserted by Claid Post at this time. These witnesses are supported by the testimony of others who have known of this right of way, and the testimony, taken as a whole, establishes the open, continuous and uninterrupted use of this way of travel for a period of from forty to fifty years. There is little contradiction as to the use of this right of way. The statement of Stella Wallace that its use by Claid Post was "by permission" is not convincing,

inasmuch as she makes no explanation of this expression, or attempts to state that any objection was ever made to the use by her former husband, Earl Post, at any time during the long period of approximately twenty-four years, when it was openly used by Claid Post, and she does not attempt to show that any objection to the use of the right of way by Earl Post was ever communicated to him. The fact that Claid Post, after the question of his right to use the road first arose in 1934, sought to have the right claimed by him evidenced by a writing, weakens his claim that his right to use the road had already vested; but, under the circumstances of this case, such action on his part cannot be held to have operated as a surrender of such rights as he may have acquired under the long use of the right of way shown by the evidence. If the case were a doubtful one on this point, such action would be considered material, if not controlling, but here it has little bearing on the merits of controversy. Therefore, we have no difficulty in finding that the circuit court was correct in its holding that such a right of way had been established.

We do not think it necessary to cite authority for the proposition that:

> "A private right of way by prescription may be acquired over another's land by visible, continuous and uninterrupted use thereof for ten years, under a *bona fide* claim of right, with the acquiescence of the owner."

*Walton* v. *Knight,* 62 W. Va. 223, 58 S. E. 1025, but the following recent cases re-establish and confirm this holding: *Roberts* v. *Ward,* 85 W. Va. 474, 475, 102 S. E. 96; *Staggers* v. *Hines,* 87 W. Va. 65, 104 S. E. 768; *Foreman* v. *Greenburg,* 88 W. Va. 376, 106 S. E. 876; *Hall* v. *Backus,* 92 W. Va. 155, 114 S. E. 449. We think the testimony in this case clearly brings it within the rule announced in the cases cited.

Another rule, equally as well established, is that "An easement of private way over land must have a particular definite line". *Crosier* v. *Brown,* 66 W. Va. 273, 66 S.

E. 326, 25 L. R. A. (N. S.) 174. We are therefore confronted with the question of whether or not the plaintiff's bill, the testimony in the case, and the decree of court upholding the Posts' right to this road are sufficient to establish the particular location of the right of way within the meaning of the authorities which require such location. The plaintiff's bill does not specifically locate the right of way on the ground, but states that it "is well marked by the old road bed and gates and has been continuously used as a right of way from the public highway to this plaintiff's land openly, notoriously, adversely and under claim and color of right", leaving us to conjecture where the road is located, except for the allegation that the road is well marked. On the theory that "that is certain which can be made certain", this allegation may have some force, but it is uncertain and unsatisfactory, at best. The testimony is slightly more specific in that it refers to the gateway on the division line between the Wallace land and the Post land, and to the corner of a meadow fence and a reference to an old or abandoned road with which the present right of way runs parallel, the meanderings of the road passing the residence of the defendants to the property line of H. B. Newlon, and over his property to the public road. The decree of the court in attempting to locate the right of way which it decreed to Post, describes it as follows:

"* * * extending from a gate in the division line fence between the property of the plaintiff and the defendants, to a pair of bars south of the Howard Davisson's House located on the defendants' land, and thence parallel with the old or abandoned road or right of way running through the meadow to the corner of the meadow west of the Howard Davisson's House, and thence to the original road or right of way and with the original road or right of way over, along and with the meanderings of said road or right of way, along and by a tenant house and along and by the residence of the defendants on the land owned by the defendant Stella Wallace to the property line of H. B. Newlon, and extending over the land of H. B. Newlon to the public highway, * * *."

The location of this road has not been made with such certainty as to justify the approval of the decree below on that point. The case should be remanded to the circuit court for the purpose of entering such decree as will specifically locate upon the ground the right of way which the plaintiff, Claid Post, may use. If the evidence already taken is not sufficient to enable the court to do this, such further proceedings ought to be had in the case, by survey or otherwise, and including additional testimony, as will enable the road to be located on the ground. In this connection, it is not improper to suggest that the use of this right of way be limited to the location established, and subjected to the same restrictions with respect to maintenance of gates, and other proper and reasonable requirements, which, while giving to Post a right of outlet, will serve to minimize the burden resting upon the servient estate.

In view of the unusual course followed in this case, we have not found it easy to determine the rights of parties with respect to the costs of this appeal. However, this being a case where the right of the plaintiff below to his outlet appears to the court to be so clear, we are reluctant to impose costs on him by reason of technical defect in the decree with respect to location of the road on the ground. It may be that the location described in the decree is sufficiently definite to enable the right of way to be located on the ground, and that further action along that line is unnecessary, but out of abundant caution we have felt that a final settlement of this dispute requires a more specific location of the right of way in question. The requirement that proceedings be had to more definitely describe the location of the right of way and locate the same on the ground ought not to be used as a justification from imposing costs upon the party whose major rights the court has upheld. We think, therefore, the appellee is the party substantially prevailing and that costs should be awarded him.

The decree of the circuit court of Taylor County is affirmed in so far as it establishes the right of plaintiff below to a right of way over the property of the defen-

dants; but the cause is remanded with direction to the court below to take such proceedings as may be necessary to locate on the ground the right of way decreed to the plaintiff.

*Affirmed, with direction.*