358 S.E.2d 452

**Deno GALANOS, et al., etc.**

v.

**NATIONAL STEEL CORP., Yobe Electric and George V. Hamilton, Inc., Appellees**

**Koppers Company, Intervenor.**

No. 16909.

Supreme Court of Appeals of West Virginia.

June 15, 1987.

Barry M. Hill, Zapula, Hill, Dittmar & Thomas, Weirton, for appellant.

George J. Anetakis, Frankovitch & Anetakis, Weirton, for appellees.

W. Dean DeLaMater, De La Mater, Hagg & Bohach, Weirton, for Koppers Co.

MILLER, Justice:

The plaintiffs in these related cases appeal final orders of the Circuit Court of Hancock County which granted summary judgment in favor of the defendant, National Steel Corporation (National). They assert that the court improperly applied the doctrine of collateral estoppel to them as they were neither parties nor privies to a prior case, *Peneschi v. National Steel Corp.*, 170 W.Va. 511, 295 S.E.2d 1 (1982), in which we affirmed a jury verdict in favor of National. We find the circuit court erred and, therefore, reverse and remand.

These cases arise out of an explosion which occurred on December 15, 1972, at a coke facility owned by National and located on Brown's Island in Hancock County. The plaintiffs, Deno Galanos, Charles H. Bensie, and Bruce Wayne Fogle, along with a Joseph Peneschi, were employed by Koppers Company, Inc., the general contractor of National. While the men were working on the construction of coke oven batteries at the facility, one of the batteries exploded and they were injured. Each of the injured workers brought a separate personal injury suit against National and two contractors based upon negligence and strict liability.

The suit brought by Joseph Peneschi proceeded to trial in August, 1979. This trial resulted in a jury verdict in favor of National, which we affirmed on appeal. *Peneschi v. National Steel Corp., supra.* Following our decision in *Peneschi*, National filed motions for summary judgment against each of the plaintiffs, asserting that because their suits involved the same operative facts and legal issues, they were in privity with Mr. Peneschi. Consequently, National argued that the plaintiffs were estopped to relitigate the issue of liability already resolved in its favor, and that National was entitled to judgment as a matter of law. The trial court agreed and granted National's motions for summary judgment.

The trial court's ruling rests upon application of the doctrine of collateral estoppel, which we discussed at some length in *Conley v. Spillers*, 171 W.Va. 584, 301 S.E.2d 216 (1983). We recognized in *Conley* that a majority of jurisdictions hold that the strict requirement of mutuality of parties is no longer necessary to enforce a judgment against another, and concluded in Syllabus Point 5:

> "In this jurisdiction under certain conditions mutuality of parties is no longer necessary in order to enforce a judgment against a party or his privy." [1]

The primary question in *Conley* was whether the plaintiffs, in their personal injury suit, could invoke collateral estoppel to preclude the defendant from relitigating the issue of liability where a favorable verdict had been obtained in a prior suit against the same defendant. We observed in *Conley* that where the plaintiff contends that a defendant is precluded by issues litigated by him in a prior trial the estoppel is deemed to be "offensive." Where, on the other hand, a defendant asserts that

---

1. In *Conley*, 171 W.Va. at 589, 301 S.E.2d at 220, we explained that under our prior law mutuality of parties was "[a] common requirement for the application of *res judicata* and collateral estoppel," and quoted from Syllabus Point 1 of *Gentry v. Farruggia*, 132 W. Va. 809, 53 S.E.2d 741 (1949):

"Where, the principle of *res judicata* is invoked in order for it to apply it must appear either that the parties in the present case are identical with those in the former litigation or that their privity with them was such as to give them a common interest in the outcome thereof."

the plaintiff is bound by a prior judgment, it is referred to as "defensive" collateral estoppel. Here the defendant seeks to utilize collateral estoppel defensively by asserting that its favorable jury verdict in the earlier *Peneschi* case, involving the same accident, precludes the plaintiffs from litigating liability again.[2]

■ We recognized in Syllabus Point 8 of *Conley* that under due process principles, a party may not be subject to estoppel unless he was afforded an opportunity to be heard in the prior litigation:

> "A fundamental due process point relating to the utilization of collateral estoppel is that any person against whom collateral estoppel is asserted must have had a prior opportunity to have litigated his claim."

We also pointed out in *Conley* that a judgment may, consistently with due process, be applied to one "who is not a party to the original action ... if such person is in privity with a party to the earlier litigation." 171 W.Va. at 594, 301 S.E.2d at 226.

National urges that the plaintiffs, as participants in a common accident with Mr. Peneschi, are in privity with him and should be estopped to relitigate the issue of National's liability. It is also argued that the plaintiffs' involvement in the *Peneschi* case, and their representation by the same attorney as Mr. Peneschi, operate to establish privity. At bottom, both of National's arguments suggest that the plaintiffs shared like interests with Mr. Peneschi which were fully and fairly represented in the trial of the *Peneschi* case.

National relies primarily upon *Cauefield v. Fidelity & Casualty Co. of New York*, 378 F.2d 876 (5th Cir.), *cert. denied*, 389 U.S. 1009, 88 S.Ct. 571, 19 L.Ed.2d 606 (1967), to support its argument that collateral estoppel may properly be applied. In *Cauefield*, a suit against a cemetery owner was brought and lost in state court, alleging that the owner had desecrated graves in the cemetery. A similar suit was brought by other plaintiffs in a federal district court, which granted a motion to dismiss based upon collateral estoppel. On appeal, the Fifth Circuit affirmed, observing that the issues to be tried in the second suit were identical to those in the state court suit and that the parties had conceded they would offer no additional evidence.

*Cauefield* is regarded as the progenitor of a theory of estoppel popularly known as "virtual representation." This theory would preclude relitigation "of any issue that [has] once been adequately tried by a person sharing a substantial identity of interests with a nonparty." 18 C. Wright, A. Miller, & E. Cooper, Federal Practice & Procedure § 4457, at 494 (1981); *see also* Note, 87 Harv. L. Rev. 1485 (1974).

■ We do not believe *Cauefield* may be read to imply privity among all who derive injury from a single wrongful act. Other jurisdictions have so limited *Cauefield* and hold that mere involvement in a common accident, without more, does not create a privity relationship among the participants for purposes of collateral estoppel. *E.g.*, *Freeman v. Lester Coggins Trucking, Inc.*, 771 F.2d 860 (5th Cir.1985) (automobile accident); *Spiker v. Capitol Milk Producers Co-op., Inc. v. Loyd*, 577 F.Supp. 416 (W.D. Va.1983) (automobile accident). We agree with the *Freeman* and *Spiker* decisions. To equate the interests of two or more persons who, by happenstance, suffer injury in a common mishap stretches due process beyond its breaking point.

Other applications of the virtual representation theory involve less radical departures from traditional privity concepts and comport with the requirements of due process. For example, a nonparty is bound by a prior judgment where he actively participated in and exercised control over the conduct of the prior litigation. *Montana v. United States*, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979); *Gerrard v. Larsen*, 517 F.2d 1127 (8th Cir.1975). Estoppel may

---

**2.** Another defensive use of collateral estoppel involves a defendant who asserts a prior judgment against a plaintiff who has previously litigated and lost against *another* defendant. *Conley*, 171 W.Va. at 591 n. 10, 301 S.E.2d at 222 n. 10.

also be invoked where a nonparty impliedly consents to abide by a prior judgment. *Boyd v. Jamaica Plain Co-Operative Bank,* 7 Mass.App. 153, 386 N.E.2d 775 (1979). Finally, if a nonparty's actions involve deliberate maneuvering or manipulation in an effort to avoid the preclusive effects of a prior judgment, he may be deemed to be bound by such judgment. *E.g., Crane v. Comm'r,* 602 F.Supp. 280 (D.Me.1985); *Katz v. Blum,* 460 F.Supp. 1222 (S.D.N.Y.1978), *aff'd,* 603 F.2d 213 (2d Cir.1979).

The present cases do not come within any of the recognized classes of virtual representation. None of the plaintiffs directly participated in the *Peneschi* case.[3] Though apparently two of the plaintiffs gave in-court testimony, the record is devoid of any indication that they exercised any degree of control over the litigation. There is likewise no showing of consent by the plaintiffs to be bound by the outcome of the *Peneschi* case. It is undisputed that Mr. Peneschi and the plaintiffs here were represented by the same attorney, however, there was clearly no express agreement to be bound nor evidence from which such an agreement might be implied. Finally, there is no indication of deceit or tactical maneuvering by these plaintiffs to avoid the preclusive effect of the adverse judgment in *Peneschi.*

We, therefore, conclude that because the plaintiffs were not parties or privies to the original suit brought by Mr. Peneschi, National cannot utilize the doctrine of collateral estoppel to bar their present actions. The circuit court erred in granting summary judgment and its orders are, therefore, reversed and the cases are remanded for further proceedings.

Reversed and Remanded.

3. The cases were filed separately and were only consolidated for purposes of appeal.