**FILED**

**May 17, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**John R. Dosch, individually and as**
**Trustee of the John R. Dosch Revocable Trust,**
**Defendants below, Petitioner,**

**vs.) No. 20-0803 (Ritchie County 16-C-48)**

**Richard E. Dunn and Cheryl C. Dunn,**
**Plaintiffs below, Respondents.**

## MEMORANDUM DECISION

Petitioner John R. Dosch, individually and as trustee of the John R. Dosch Revocable Trust, by counsel George J. Cosenza and Thomas H. Fusonie, appeals the Circuit Court of Ritchie County's September 16, 2020, and April 20, 2020, orders denying petitioner's motion to amend the judgment after the circuit court granted summary judgment to respondents, Richard E. Dunn and Cheryl C. Dunn, and denied petitioner's motion for summary judgment. Respondents, by counsel John N. Ellem, filed a response to which petitioner filed a reply.

After considering the parties' written and oral arguments, as well as the appendix record and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's orders is appropriate under Rule 21 of the Rules of Appellate Procedure.

This case is a dispute over access to a right-of-way (referred to as the "Lantz roadway"), which is a dirt and gravel roadway located in rural Ritchie County that connects State Road 53/1 ("SR 53/1") with an area known as Bear Run.[1] Approximately twenty-two years ago, petitioner and others sued then-property owner Ronald P. Lantz to prevent him from blocking access to the Lantz roadway by locking a gate that crossed it, as the roadway was used by the parties and by the community. Petitioner was successful in that action and the circuit court permanently enjoined Mr. Lantz from blocking petitioner, as well as others, from freely traveling on the Lantz roadway. In 2011, petitioner purchased the Lantz property and proceeded to engage in the same conduct for

---

[1] The right-of-way is approximately a quarter mile in length. The disputed portion of the Lantz roadway is located on petitioner's approximately thirty-five-acre parcel of property on the east side of SR 53/1. Since December 16, 1986, respondents have owned approximately thirty-three acres of property that is situated to the west of petitioner's property and borders it. Specifically, respondents own a "sliver of property on the east of SR 53/1. Within that sliver of property on the east of SR53/1 is a 'small portion of roadway' that connects the Lantz roadway to SR 53/1." A survey prepared prior to the institution of this litigation confirms that the Lantz roadway actually starts on respondents' property, which is also where petitioner's property accesses the Lantz roadway.

1

which he had sued Mr. Lantz – he locked the same gate that had earlier been locked by Mr. Lantz, thereby blocking respondents from accessing the Lantz roadway which originates on respondents' property.

## First Lawsuit

The Lantz roadway has been existence for about ninety years and, as previously mentioned, was the subject of a prior combined lawsuit filed in 1999 and 2000 by petitioner and other plaintiffs for the purpose of enjoining the defendant, Mr. Lantz, from permanently blocking the Lantz roadway. [2]  At that time, Mr. Lantz owned the thirty-three-acre tract, which he had owned since November 7, 1994.  Also, at the time of the first lawsuit petitioner owned several tracts of property adjacent to the Brooks property, which was adjacent to the Smith property, which was adjacent to the property owned by Mr. Lantz.

In 2004, following a bench trial, the circuit court issued an order resolving the first actions. In that order, the court described the existence of Lantz roadway, which allowed access to what is known as the Bear Run area.  Critically, the court also made the following factual findings,[3] which findings were admitted by petitioner in his answer to respondents' complaint in the instant action:

> 11.     That a roadway intersecting with State Rd 53/1 passed through Lantz's property and then through Smith, Brooks and Dosch allowing access to the Bear Run area.
>
> 12.     That the [c]ourt found a roadway was constructed in a collaborative effort by the families that resided on the properties over 70 years prior to the trial.
>
> 13.     That the [c]ourt further found that although none of the parties resided on the property, the roadway was used in an uninterrupted, open and continuous manner without objection by Lantz or his predecessors.
>
> 14.     That accordingly the [c]ourt found a right to use the roadway existed by prescription.
>
> 15.     That notably, the [c]ourt found that:

---

[2] The styles of the two combined Ritchie County actions were *John and Margaret Dosch, husband and wife; and George Smith v. Ronald P. Lantz*, Civil Action No. 99-C-45, and *Edward Lee Brooks v. Ronald P. Lantz*, Civil Action No. 00-C-27.

[3] The findings listed above were excerpted from respondents' complaint and from the April 20, 2020, order, both of which paraphrased the findings that were originally made in the 2004 order.

Mr. Lantz testified that the public perception that use of the roadway was permissible was due to the road having been used by the public for "so long without permission."

In the 2004 order, the circuit court further found that "Mr. Lantz testified that usage of the roadway prior to the erection of the gate was open and obvious[;] [t]here have been periods of time when the roadway has been less traveled than other times, but the roadway has been in continuous use since its construction and has not been abandoned." Finally, the court found that "[t]he existence of and right to use the roadway appears in the chain of title to Mr. Lantz' property, said change being of record through prior deeds in the Office of Clerk of the County Commission of Ritchie County, West Virginia."

Consequently, in its 2004 order the court concluded that as a matter of law plaintiffs (including petitioner) had "established the existence of a prescriptive easement, as it has been shown that usage of subject road has been open, continuous and uninterrupted, under a bona fide claim of right, and without objection for a period in excess of ten years." The court further determined:

> 3.      That Plaintiffs [including petitioner] have a right of way over the roadway that should not be restricted in any way. The entire roadway shall be subject to use by all the Plaintiffs, the Defendant, their respective families, social or business invitees, their heirs, assigns, and/or successors for ingress and egress and for access to and from *the public roadway.*

> 4.      Mr. Lantz, his agents, servants, and/or employees shall be, and are hereby, permanently enjoined from erecting or placing any barrier, natural or man-made, upon the subject roadway . . . .

(Emphasis added).

## Second Lawsuit

In the current litigation, petitioner is engaged in the identical conduct for which he sued the previous owner of the same property in the first lawsuit. After petitioner purchased the Lantz property in 2011, he placed a lock on the gate that had been erected by Mr. Lantz for the purpose of blocking access to the Lantz roadway. When respondent Mr. Dunn asked petitioner if he could use the road, petitioner told him there was no reason for him to do so. Respondent Mr. Dunn used the roadway to access his cabin, especially during hunting season. Interestingly, petitioner testified that he gave other property owners, including Mr. Brooks, Mr. Smith, and the Hardbargers access to the Lantz roadway – but not respondents.[4]

---

[4] This caused respondent Mr. Dunn to place a gate and lock on the portion of the roadway that crossed his property, which prevented petitioner from using the roadway to access SR 53/1, although petitioner was able to use a different roadway to access this road.

Respondents sued petitioner, alleging that they are entitled to use the Lantz roadway. Respondents asserted claims of offensive collateral estoppel, based upon the findings in the first lawsuit, an easement by prescription, and injunctive relief seeking to require petitioner to remove the gate and/or lock blocking the use of the Lantz roadway. After a period of discovery, the parties filed their respective motions for summary judgment.

On April 20, 2020, the circuit court granted summary judgment in favor of respondents in a twenty-five-page order. The court determined that respondents had satisfied the doctrine of collateral estoppel[5] and were entitled to a prescriptive easement by application of that doctrine. Specifically, the circuit court noted that the parties agreed there had been a final determination on the merits in 2004 in the combined cases, Civil Action Nos. 99-C-45 and 00-C-27. The court further found that "[e]ach of the opposing sides in this litigation largely agree that the two previous actions and the case at bar involve either the same parties or persons in privity or successors in interest with those same parties." Accordingly, the court concluded that "the Plaintiffs are in privity by operation of the doctrine of virtual representation and the trust defendant is in privity by virtue of being a successor in interest to a party to the previous actions." Further, the court recognized that

> one cannot avoid the effect of a legal determination simply because they were not joined as a party to the suit. *Gribben v. Kirk*, 195 W.Va. 488, 499 S.E.2d 147 (1995). Although it is the Plaintiffs who desire to avail themselves of the ruling in the prior actions, the principle likewise applies.

The court further found, based upon petitioner's admission, that he had fully and fairly litigated "issues concerning the access to the roadway as described [in the Complaint]." The court also found that "the claims and issues in the case at bar are identical to the cause of action identified in the previous cases and were resolved or could have been resolved . . . in the prior actions." Thus, the circuit court determined that

> 19. Judge Holland's resolution of the previous actions necessarily has the effect of an affirmative judgment in favor of the Plaintiffs with respect to the issues relevant in this case to-wit: the existence and location of the right-of-way easement.
>
> 20. Inasmuch as the issue of the existence and location of a right-of-way easement has been previously established and found to be dispositive of that issue now before the Court as above set forth, the issue of whether the plaintiffs have independently established the same is moot. Therefore, the Court makes no determination in this regard.

---

[5] *See* Syl. Pt. 3, *Holloman v. Nationwide Ins. Co.*, 217 W. Va. 269, 617 S.E.2d 816 (2005) (discussed *infra* in greater detail).

Finally, the circuit court found that respondents "have a right of way over the roadway that should not be restricted in any way" ordering that

> consistent with paragraph 4 of Judge Holland's conclusion of law set forth in his October 7, 2004 Order, that the Defendants herein, their agents, successors, assigns, and employees are hereby to be permanently enjoined from erecting or placing any barrier, natural or man-made upon the subject roadway located in Murphy District, Ritchie County, West Virginia as described on Tax Map 22 as parcel 10 and conveyed to them by deed dated November 23, 2011.

> The Court **FINDS** and **ORDERS** there is no waiver of the benefit of the ruling in the previous suits, 99-C-45 and 00-C-27, due to the Court's ruling herein on the issues of res judicata, virtual representation, and collateral estoppel. The rights and interests of the parties to this proceeding shall be the same as those determined among the parties to the previous cases (99-C-45 and 00-C-27) as set forth in the final order therein.

Petitioner filed a motion to amend the order, arguing that respondents had failed to present evidence that could have established a prescriptive easement and that various doctrines of res judicata, collateral estoppel, and virtual representation did not apply. The circuit court denied the motion by order entered September 16, 2020. The instant appeal followed.

This case is before the Court on appeal of the circuit court's orders denying petitioner's motion for summary judgment and motion to amend the order. We have previously held that "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). Further,

> [t]he standard of review applicable to an appeal from a motion to alter or amend a judgment, made pursuant to W. Va. R. Civ. P. 59(e), is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed.

Syl. Pt. 1, *Wickland v. Am. Travellers Life Ins. Co.*, 204 W. Va. 430, 513 S.E.2d 657 (1998). With these standards in mind, we review the issues before us.

The dispositive issue in this case is whether the circuit court erred in granting respondents summary judgment on the grounds that respondents had a prescriptive easement through application of res judicata, collateral estoppel, or virtual representation.[6] Petitioner argues that the

---

[6] Because we affirm the circuit court's determination that the doctrine of collateral estoppel applies and that respondents' prescriptive easement exists based upon application of that doctrine, petitioner's other assignments of error, that respondents failed to meet the elements necessary to

5

circuit court "misapplied the disfavored legal doctrine of offensive collateral estoppel," and erred in its determination that respondents had satisfied the requirements necessary for offensive collateral estoppel to apply.[7]  Respondents counter that the circuit court properly applied the doctrine of offensive collateral estoppel, asserting that "[t]he Circuit Court's ruling properly requires [petitioner] to abide by the very facts that they themselves established in the earlier litigation concerning the Lantz roadway and which facts they now seek to deprive [respondents] of and necessarily wish to relitigate."  We agree with respondents.

We held in syllabus point three of *Holloman v. Nationwide Mut. Ins. Co.*, 217 W. Va. 269, 617 S.E.2d 816 (2005):

> "Collateral estoppel will bar a claim if four conditions are met: (1) The issue previously decided is identical to the one presented in the action in question; (2) there is a final adjudication on the merits of the prior action; (3) the party against whom the doctrine is invoked was a party or in privity with a party to a prior action; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action." Syllabus Point 1, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995).

We stated in *Holloman* that collateral estoppel is "deemed to be offensive" when a plaintiff, who was not a party to the prior action, seeks to foreclose relitigation of issues in a second lawsuit.  *Id.* at 274, 617 S.E.2d at 821.  However, "the right to offensively invoke collateral estoppel is not automatic and rests in the discretion of the trial court.  *Conley*, 171 W.Va. at 592, 301 S.E.2d at 224; *Laney v. State Farm Mut. Ins. Co.*, 198 W.Va. 241, 246, 479 S.E.2d 902, 907 (1996)." *Holloman*, 217 W. Va. at 275, 617 S.E.2d at 822.

---

establish a prescriptive easement independently and that the circuit court erred in its denial of petitioner's motion to amend the judgment to correct "clear errors," are moot.

[7] Respondents dispute petitioner's argument that the circuit court, sua sponte, applied the doctrine of res judicata merely because the circuit court had also applied and ruled on the doctrine of collateral estoppel.  *See* Syl. Pt. 4, *Blake v. Charleston Area Med. Ctr., Inc.*, 201 W.Va. 469, 498 S.E.2d 41 (1997) ("Before the prosecution of a lawsuit may be barred on the basis of res judicata, three elements must be satisfied. First, there must have been a final adjudication on the merits in the prior action by a court having jurisdiction of the proceedings.  Second, the two actions must involve either the same parties or persons in privity with those same parties.  Third, the cause of action identified for resolution in the subsequent proceeding either must be identical to the cause of action determined in the prior action or must be such that it could have been resolved, had it been presented, in the prior action.").  We agree with respondents that the doctrines of res judicata and collateral estoppel are very similar. *See Fruth v. Powers*, 239 W. Va. 809, 817-18, 806 S.E.2d 465, 473-74 (2017) ("Res judicata and collateral estoppel both preclude relitigation of matters that have previously been decided.").  Further, we find that the circuit court's discussion of law in regard to res judicata and privity aided in the understanding and application of the doctrine of collateral estoppel.

6

It is beyond dispute that the *Holloman* conditions number 2, 3, and 4 needed to establish collateral estoppel have been met in this case. *See id.* at 271, 617 S.E.2d at 818, Syl. Pt. 3. Petitioner admitted in his answer to respondents' complaint that

> 27. That Ritchie County Civil Actions Nos. 99-C-45 and 00-C-27 received a full and final adjudication on the merits.

> 28. That the Defendant, Dosch, was a party in the prior combined litigation and the Defendant Dosch is at all times hereto in privity with and directs the actions of the Defendant, John R. Dosch Revocable Trust.

> 29. That the Defendants herein full and fairly litigated issues concerning the access to the roadway as described above [in the complaint].

The circuit court's order also reflected that the parties agreed that these conditions were met.[8] Thus, the focus turns to *Holloman* condition number 1 – "[t]he issue previously decided is identical to the one presented in the action in question[.]" *See id.* at 271, 617 S.E.2d at 818, Syl. Pt. 3.

In this regard, petitioner contends that the previous litigation focused on how *petitioner* and the other plaintiffs in the earlier case used the Lantz roadway, whereas the current litigation focuses on how *respondents* use the Lantz roadway, arguing that "[t]he uses of the Lantz Roadway are undoubtedly different." Specifically, petitioner contends that because respondents did not need to use the Lantz roadway to access their property, while the plaintiffs in the first lawsuit did, the factual issues are different. Petitioner also argues the legal issues are different, because the "legal principles surrounding prescriptive easements have changed since 2004." We disagree.

The theory of collateral estoppel known as "virtual representation . . . preclude[s] relitigation 'of any issue that [has] once been adequately tried by a person sharing a substantial identity of interests with a nonparty.' 18 C. Wright, A. Miller, & E. Cooper, Federal Practice & Procedure § 4457, at 494 (1981); *see also* Note, 87 Harv. L. Rev. 1485 (1974)." *Galanos v. Nat'l Steel Corp.*, 178 W. Va. 193, 195, 358 S.E.2d 452, 454 (1987). The Court further explained in

---

[8]Petitioner argues that while "[he] full and fairly litigated issues concerning *his* access to the Lantz Roadway in the previous litigation, he never admitted that he or any predecessor in interest full and fairly litigated *all* issues related to the Lantz Roadway, including issues related to [respondents] right to access it." The required condition at issue for collateral estoppel concerns whether "the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action." *See Holloman*, 217 W. Va. at 271, 617 S.E.2d at 818, Syl. Pt. 3. We have no trouble upholding the circuit court's determination that this condition was met based upon petitioner's admission in his answer to the complaint.

*Beahm v. 7 Eleven, Inc.*, 223 W. Va. 269, 672 S.E.2d 598 (2008), that the application of res judicata or collateral estoppel cannot be escaped if privity exists.   In this regard,

> [t]his Court has recognized that "[p]rivity, in a legal sense, ordinarily denotes 'mutual or successive relationship to the same rights of property.'" *West Virginia Human Rights Comm'n v. The Esquire Group, Inc.*, 217 W.Va. 454, 460, 618 S.E.2d 463, 469 (2005)(*quoting* Syl., *Cater v. Taylor*, 120 W.Va. 93, 196 S.E. 558 (1938)).

> As we previously explained in *West Virginia Human Rights Comm'n v. Esquire Group, Inc.*, 217 W.Va. 454, 460-61, 618 S.E.2d 463, "the concept of privity with regard to the issue of claim preclusion is difficult to define precisely but the key consideration for its existence is the sharing of the same legal right by parties allegedly in privity, so as to ensure that the interests of the party again[st] whom preclusion is asserted have been adequately represented." It has been recognized that "[p]rivity . . . 'is merely a word used to say that the relationship between one who is a party on the record and another is close enough to include that other within the res judicata.'" *Rowe v. Grapevine Corp.*, 206 W.Va. 703, 715, 527 S.E.2d 814 (1999).  In other words, "preclusion is fair so long as the relationship between the nonparty and a party was such that the nonparty had the same practical opportunity to control the course of the proceedings that would be available to a party." *Gribben*, 195 W.Va. at 498 n.21, 466 S.E.2d at 157 n.21.

> In determining whether privity exists, we have previously utilized the doctrine of "virtual representation." Virtual representation, a variety of privity, "precludes relitigation of any issue that [has] once been adequately tried by a person sharing a substantial identity of interests with a nonparty." *Galanos v. National Steel Corp.*, 178 W.Va. 193, 195, 358 S.E.2d 452, 454 (1987).

*Beahm*, 223 W. Va. at 273-74, 672 S.E.2d at 602-03 (emphasis added).

We first find that the factual issues in the instant action are the same as those in the first lawsuit.  While petitioner now seeks to limit the findings made by the circuit court in 2004 to petitioner's usage of the road at that time, a clear reading of the factual findings set forth *supra* defeats such a limitation.  The circuit court's findings in 2004 were not limited solely to how plaintiffs (including petitioner) used the road but how others, including the general public, used the road as well.  Indeed, the circuit court found that more people than just the named plaintiffs in the prior litigation used the Lantz roadway to access the Bear Run area—which is exactly how respondents now use the roadway.  Specifically, respondent Mr. Dunn testified that he had been using the Lantz roadway since the 1980's.

8

Second, we find that the legal issues are also the same in both actions. Here, petitioner was a plaintiff in the litigation that resulted in the circuit court's determination in 2004 that the Lantz roadway could not be blocked because plaintiffs had established the existence of a prescriptive easement. In support of this conclusion, the circuit court citied to *Post v. Wallace*, 199 W. Va. 132, 192 S.E. 112 (1937),[9] for the elements needed to establish a prescriptive easement.

Petitioner ascribes significance to the court's reliance upon *Post* in the prior litigation which was decided prior to this Court's decision in *O'Dell v. Stegall*, 226 W. Va. 590, 703 S.E.2d 561 (2010) ("A person claiming a prescriptive easement must prove each of the following elements: (1) the adverse use of another's land; (2) that the adverse use was continuous and uninterrupted for at least ten years; (3) that the adverse use was actually known to the owner of the land, or so open, notorious and visible that a reasonable owner of the land would have noticed the use; and (4) the reasonably identified starting point, ending point, line, and width of the land that was adversely used, and the manner or purpose for which the land was adversely used."). Petitioner claims, more specifically, that "[i]n 2010, this Court established that adverse use was required to prove a prescriptive easement and that the burden of proving adverse use is on the party asserting a prescriptive easement and it overruled a long line of cases holding otherwise." However, a clear reading of *O'Dell* fails to support petitioner's contention.

Critically, this Court noted in *O'Dell* that "[m]any cases prior to 1951 [including *Post*] alluded to the various elements of the prescriptive easement doctrine, but *Town of Paden City* was the first case to assemble all of the elements together into one, cohesive rule." *Id*. at 606, n.9, 703 S.E.2d at 577 n. 9 (citing Syl. Pt. 1, *Town of Paden City v. Felton*, 136 W. Va. 127, 66 S.E.2d 280 (1951) ("To establish an easement by prescription there must be continued and uninterrupted use or enjoyment for at least ten years, identity of the thing enjoyed, and *a claim of right adverse to the owner of the land*, known to and acquiesced in by him; but if the use is by permission of the owner, an easement is not created by such use." (emphasis added)). Further, in enunciating syllabus point one in *O'Dell*, the Court stated that it was doing so only because "we believe[d] that [the new syllabus was] the better expression of the doctrine." 226 W. Va. at 608, 703 S.E.2d at 579.

Contrary to petitioner's position, the significant change to our law in *O'Dell* pertained to the burden of proof necessary to establish adverse use. *See id*. at 614-15, 703 S.E.2d at 585-86 ("We now turn to the incongruity with our prior case law, namely that our cases allow a finder of fact to conclusively presume that a use was adverse if the other elements of the prescriptive easement doctrine are established."). In this regard, the Court held in syllabus point seven that

> [t]he burden of proving adverse use is upon the party who is claiming a prescriptive easement against the interests of the true owner of the land. To the extent our prior cases suggest that *proof of adverse use is not required*, or that the continuous and

---

[9] We held in *Post* that "[t]he open, continuous, and uninterrupted use of a road over the land of another, under bona fide claim of right, and without objection from the owner, for a period of ten years, creates in the user of such road a right by prescription to the continued use thereof." 119 W. Va. at 132, 192 S.E. at 113, Syl. Pt. 2.

9

> uninterrupted use of another's land for ten years is *presumed* to be adverse, they are hereby overruled.

226 W. Va. at 596, 703 S.E.2d at 567, Syl. Pt. 7 (emphasis added).  The circuit court's findings in 2004 show that based upon the evidence presented at that time, plaintiffs (including petitioner) proved that the Lantz roadway existed through public use "for so long without permission," that "the roadway has been in continuous use since its construction [seventy years prior] and has not been abandoned," and that "[t]he roadway has been utilized in an uninterrupted, open and continuous manner, without objection from Mr. Lantz' predecessors in title for a period well in excess of ten years."  Succinctly stated, the element of adverse use was established by the evidence and not presumed, despite the fact that the circuit court in the 2004 order did not use the magic word "adverse."   Therefore, in the first lawsuit the circuit court found the existence of a prescriptive easement by applying what are essentially the same elements established in *O'Dell*. *Compare O'Dell*, 226 W. Va. at 596, 703 S.E.2d at 567, Syl. Pt.1 *with Post*, 119 W. Va. at 132, 192 S.E. at 113, Syl. Pt. 2.  Consequently, the circuit court in the instant case was correct in its determination that respondents met the *Holloman* requirement that "[t]he issue[s] previously decided . . . [are] identical to the one[s] presented in the action in question."  *See* 217 W. Va. at 271, 617 S.E.2d at 818, Syl. Pt. 3.  Thus, because respondents have established all of the conditions needed for application of the doctrine of offensive collateral estoppel, the circuit court correctly determined that petitioner is precluded from trying to relitigate any issues concerning the Lantz roadway as those issues were fully and fairly adjudicated in the 2004 order.[10]  *See Bell v. Perkins*, No. 19-0019, 2021 WL 595415 (W. Va. Feb. 16, 2021) (memorandum decision) (finding collateral estoppel barred petitioners' attempt to seek relief from application of a prior determination of the same issue in an earlier action.).

Additionally, like in *Bell*, we find petitioner's challenge to respondents' action barred by judicial estoppel.  Although not raised by respondents, "it is generally recognized that 'a court, even an appellate court, may raise [judicial] estoppel on its own motion in an appropriate case.'" *W. Va. Dep't of Transp., Div. of Highways v. Robertson*, 217 W. Va. 497, 503-04, 618 S.E.2d 506, 512-13 (2005) (quoting *In re Cassidy*, 892 F.2d 637, 641 (7th Cir. 1990)); *accord Bell*, 2021 WL 595415, at *6.  In the first lawsuit, petitioner herein, along with other plaintiffs, requested the circuit court to find a prescriptive easement over the same property at issue in this case.  In *Bell*, we recognized that "'a party is "generally prevent[ed] . . . from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'" *Robertson*, 217 W. Va. at 504, 618 S.E.2d at 513 (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000))." 2021 WL 595415, at *6.  Petitioner seeks to prohibit respondents from using the prescriptive easement he had judicially imposed on the former property owner.  This Court held in syllabus point two of *Robertson*:

> Judicial estoppel bars a party from re-litigating an issue when: (1) the party assumed a position on the issue that is clearly inconsistent with a position taken in a previous case, or with a

---

[10] The circuit court's determination that whether respondents had established a prescriptive easement independent of the collateral estoppel application was moot aligns with this Court's determination of the same issue.  *See supra* n.6.

position taken earlier in the same case; (2) the positions were taken in proceedings involving the same adverse party; (3) the party taking the inconsistent positions received some benefit from his/her original position; and (4) the original position misled the adverse party so that allowing the estopped party to change his/her position would injuriously affect the adverse party and the integrity of the judicial process.

217 W. Va. at 499, 618 S.E.2d at 508, Syl. Pt. 2. Here, petitioner has clearly assumed a position that is inconsistent with the position he took in the first lawsuit. By operation of the doctrine of virtual representation, petitioner's positions are being asserted in proceedings that involve the same adverse parties. It is undisputed that petitioner received a benefit from the position he took in the first lawsuit, which position is inconsistent with that taken in the current lawsuit. Finally, it is axiomatic that petitioner's change in his position in regard to the prescriptive easement not only "would injuriously affect" respondents but the integrity of the judicial process as well. *Id.*; *see Bison Ints., LLC v. Antero Res. Corp. & CGAS Props. L.P.*, 244 W. Va. 391, 405, 854 S.E.2d 211, 225 (quoting *Robertson*, 217 W. Va. at 505, n.19, 618 S.E.2d at 514 n.19) (stating judicial estoppel "'preclud[es] litigants from playing fast and loose with the courts, and prohibit[s] parties from deliberately changing positions according to the exigencies of the moment.'"); *accord Bell*, 2021 WL 595415, at *6.

For the foregoing reasons, we find no error in the circuit court's decisions in this case and affirm the court's April 20, and September 16, 2020, orders.

Affirmed.

**ISSUED:** May 17, 2022

**CONCURRED IN BY:**

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice William R. Wooton

Justice C. Haley Bunn did not participate in the decision of the Court.

**DISSENTING:**

Justice Tim Armstead

11

No. 20-0803, *John R. Dosch, Individually and as Trustee of the John R. Dosch Revocable Trust v.*

*Richard E. Dunn and Cheryl C. Dunn*

**Armstead, Justice, dissenting:**

The respondents in this matter, Richard and Cheryl Dunn, claim that they have a prescriptive easement that entitles them to use a roadway across land formerly owned by Ronald Lantz (the "Lantz Roadway"). The circuit court granted summary judgment to the Dunns based primarily on doctrines of collateral estoppel and virtual representation. In applying these doctrines, the circuit court looked to prior litigation concluded in 2004 ("2004 Litigation"), between petitioner John Dosch[1] and Mr. Lantz in which Mr. Dosch successfully asserted a prescriptive right to use the Lantz Roadway. On appeal, the majority decision affirms the circuit court and, in doing so, adopts the circuit court's finding that the issues of fact and law on which Mr. Dosch prevailed as a plaintiff are the same issues as those on which Mr. and Mrs. Dunn must now prevail against Mr. Dosch (and the John R. Dosch Revocable Trust) as a defendant. Because I disagree with this finding, I respectfully dissent.

Collateral estoppel does not "bar a claim" unless "[t]he issue previously decided is *identical* to the one presented in the action in question[.]" Syl. Pt. 3, in part, *Holloman v. Nationwide Mut. Ins. Co.*, 217 W. Va. 269, 617 S.E.2d 816 (2005) (emphasis added). An issue is not "identical" unless it involves the same facts and legal standards. *Holloman* at 274, 617 S.E.2d at 821. Collateral estoppel also requires that "the party against whom the doctrine is raised had a full and fair opportunity to litigate *the issue* in the prior action." *Id.* at 271, 617 S.E.2d at 818, syl. pt. 3, in part (emphasis added). This is a matter of "fundamental due process[,]" Syl. Pt. 8, in part, *Conley v. Spillers*, 171 W. Va. 584, 301 S.E.2d 216 (1983), and these conditions—an identical issue and a prior opportunity to litigate—apply regardless of whether the person invoking collateral estoppel was a party to the prior litigation. *Holloman* at 274, 617 S.E.2d at 821.

Virtual representation, as the majority decision notes, is a species of collateral estoppel that "preclude[s] relitigation of any issue that [has] once been adequately tried by a person sharing a substantial identity of interests with a nonparty." *Galanos v. Nat'l Steel Corp.*, 178 W. Va. 193, 195, 358 S.E.2d 452, 454 (1987) (second alteration in original) (internal quotation marks omitted). We have also described virtual representation as a "variety of privity[.]" *Beahm v. 7 Eleven, Inc.*, 223 W. Va. 269, 274, 672 S.E.2d 598, 603 (2008) (per curiam). Cases that discuss virtual representation sometimes venture into such questions as whether a party attempted to "avoid the impact" of an unfavorable ruling, *Beahm* at 274, 672 S.E.2d at 603, or whether the party "exercised any degree of control over the litigation[,]" *Galanos* at 196, 358 S.E.2d at 455. However, these questions are inappropriate until we have first established that what is at stake is, in fact, a *relitigation* of an issue. *Galanos* at 195, 358 S.E.2d at 454. Neither the doctrine of collateral estoppel nor the doctrine of virtual representation applies when, as here, the issue in question has never been decided.

---

[1] The other plaintiffs were Margaret Dosch (Mr. Dosch's wife), George Smith, and Edward Lee Brooks.

12

The majority decision claims that Mr. Dosch's prior dispute with Mr. Lantz and his current dispute with the Dunns share the same factual and legal issues. According to the majority decision, "[t]he circuit court's findings in 2004 were not limited solely to how plaintiffs (including petitioner) used the road but *how others, including the general public, used the road* as well." (Emphasis added.) Later, the majority decision explains that "based upon the evidence presented at that time, plaintiffs (including [Mr. Dosch]) proved that the Lantz roadway *existed through public use* 'for so long without permission,' that 'the roadway has been in continuous use'" for decades. (Emphasis added.)

This reasoning reflects a fundamental misunderstanding of the law of prescriptive easements. We have said that

> [a] person claiming a prescriptive easement must prove each of the following elements: (1) the adverse use of another's land; (2) that the adverse use was continuous and uninterrupted for at least ten years; (3) that the adverse use was actually known to the owner of the land, or so open, notorious and visible that a reasonable owner of the land would have noticed the use; and (4) the reasonably identified starting point, ending point, line, and width of the land that was adversely used, and the manner or purpose for which the land was adversely used.

Syl. Pt. 1, *O'Dell v. Stegall*, 226 W. Va. 590, 703 S.E.2d 561 (2010). Our opinion in O'Dell clearly provides that a claimant must establish his or her own use of the easement, or the use of a predecessor in title, to establish adverse possession. In *O'Dell* we declared that "[a] person claiming a prescriptive easement must first show that *his or her use* of the servient estate was 'adverse' to the rights of the true owner." *Id.* at 609, 703 S.E.2d at 580 (emphasis added). It stipulates that "adverse use is measured by the observable actions and statements *of the person claiming a prescriptive easement* and the owner of the land." *Id.* at 611, 703 S.E.2d at 582 (emphasis added). Later it clarifies that "*if the claimant made use* of the servient estate with the owner's permission, then the use was not adverse[,]" *id.* at 613, 703 S.E.2d at 584 (emphasis added), and that "[t]he term 'continuous' means that an adverse possession has not been abandoned *by the claimant* during the ten-year period[,]" *id.* at 616, 703 S.E.2d at 587 (emphasis added). Such statements pervade the opinion and represent no new holding on the part of the Court. More than eight decades ago, we held that when "a right of way is claimed by prescription, the claimant should allege and prove that over the prescriptive period, without interruption, *he (or a predecessor in title) used* the way with such open frequency as to notify its owner of the purpose to subject his land to the use." Syl. Pt. 1, in part, *Nutter v. Kerby*, 120 W. Va. 532, 199 S.E. 455 (1938) (emphasis added).

As *Nutter* suggests, a claimant's proof is not strictly limited to his or her own use. He or she is allowed to claim adverse use on the part of "a predecessor in title[.]" *Ibid*; *accord O'Dell* at 620, 703 S.E.2d at 591 ("The plaintiff bore the burden of proving . . . that he (*or his predecessors in title*) (1) adversely used the gravel lane against the interests of its owner . . . ." (emphasis added)).

13

Here, neither the Dunns not their predecessors in title have established such use.[2]  As we stated in *O'Dell*, "[a] claimant is adversely using another's land when he 'assert[s] an *independent and individual right in himself* to use the way and . . . the right to do so *did not depend upon a similar right to such use in other persons*.'" *Id.* at 612, 703 S.E.2d at 583 (alteration in original) (quoting *Town of Paden City v. Felton,* 136 W.Va. 127, 140, 66 S.E.2d 280, 288 (1951) *overruled on other grounds by O'Dell*, 226 W. Va. 590, 703 S.E.2d 561).

Likewise, use by the public does not support a prescriptive easement claim.  In fact, use by the public creates a rebuttable *presumption* that a prescriptive easement does not exist.  As we held in *Hall v. Backus*, "[u]se of an open way in common with the owner of the land on which it is and the public in general, is presumptively permissive and not exercised under a claim of right[.]"  92 W. Va. 155, 114 S.E. 449 (1922), syl. pt. 3, in part, *overruled on other grounds by O'Dell*, 226 W. Va. 590, 703 S.E.2d 561.  Under such circumstances, a claimant who wishes to assert a prescriptive easement must show "some act *on the part of the person so using it*, or circumstance under which *he used it*, showing a claim of exclusive or peculiar right in him, distinct from that of the general public."  *Ibid* (emphasis added).[3]

From these authorities, two things are clear.  First, the issues of fact and law in Mr. Dosch's suit against Mr. Lantz were not the same as the issues of fact in the Dunns' suit against Mr. Dosch.  The plaintiffs in the 2004 Litigation, John and Margaret Dosch, George Smith, and Edward Lee Brooks, all owned properties to the east of Mr. Lantz's property, and according to the circuit court order from that case ("2004 Order"), the Lantz Roadway "begins on the property owned by Mr. Lantz and passes through the properties set forth above."  In order to prevail in the 2004 Litigation, Mr. Dosch and his fellow plaintiffs were obliged to prove *their adverse use* of the Lantz Roadway,[4]

---

[2] A claimant may also be allowed to claim adverse use by his or her "customers, guests, and visitors[.]"  *O'Dell* at 612 n.21, 703 S.E.2d at 583 n.21 ("The *Restatement (Third) of Property (Servitudes)* indicates that prescriptive use . . . 'may be made by tenants, customers, guests, and visitors *of the claimant*.' *Id.,* § 2.16, cmt. e." (emphasis added)); *but see Keller v. Hartman*, 175 W. Va. 418, 424, 333 S.E.2d 89, 95 (1985), *overruled on other grounds by O'Dell*, 226 W. Va. 590, 703 S.E.2d 561 ("[A]dverse use by a lessee of a way appurtenant to the leasehold premises inures to the benefit of the lessor only where the way is included, expressly or impliedly in the lease.").  However, these modest exceptions not only prove the rule that the adverse use must be individual to the claimant, but are clearly not present in this case.

[3] To prove a public easement by prescription, the claimant must show both "continuous and adverse user by the public during the statutory period" and "some official recognition thereof as a public road by the county court, as by work done on it by a supervisor acting by appointment of that tribunal[.]"  Syl. Pt. 4, in part, *Ryan v. Monongalia Cnty. Ct.*, 86 W. Va. 40, 102 S.E. 731 (1920).

[4] The "entire history" of *their* use of the Lantz Roadway would have been subject to examination.  *O'Dell* at 620, 703 S.E.2d at 591 ("The entire history of the claimant's usage of the way over which an easement is sought must be evaluated to determine the character and scope of the prescriptive easement. *See Clain–Stefanelli v. Thompson,* 199 W.Va. 590, 595, 486 S.E.2d 330, 335 (1997).")

not that of the general public and certainly not that of the Dunns (or their predecessors in title), who own property to the west of what was formerly Mr. Lantz's property.[5]

Moreover, as to the legal requirements to establish a prescriptive easement, there was also a substantial change in law between the time the 2004 Order was entered and the time the circuit court granted summary judgment in this matter. Our decision in *O'Dell* did not merely overrule cases "pertain[ing] to the burden of proof necessary to establish adverse use." In *O'Dell*, we found a "tangled mass of weeds" and a "morass of case law," and we deliberately set about "to *clarify* the common law doctrine of prescriptive easements[,] . . . *eliminate archaic and contradictory terms*, and *establish terms and definitions* that are understandable to the modern factfinder." *Id.* at 599, 703 S.E.2d at 570 (emphasis added); *see also Renner v. Bonner*, 227 W. Va. 378, 387, 709 S.E.2d 733, 742 (2011) (Ketchum, J., concurring) (describing *O'Dell* as "refining and updating the law of prescriptive easements"). In *O'Dell* we adopted *ten* new syllabus points on this doctrine alone. *Id.* at 596, 703 S.E.2d at 567, syl. pts. 1, 3-10, and 13; *see Carr v. Veach*, 244 W. Va. 73, 79–80, 851 S.E.2d 519, 525–26 (2020) (observing that "*O'Dell* clarified over one hundred years of this Court's precedents on prescriptive easements and in so doing, provided clear guidance in a series of Syllabus Points as to what the term 'adverse use' means and what evidence is required to establish it"). Indeed, *O'Dell* rewrote our summary of the elements of this cause of action to provide a "better expression of the doctrine[.]" *Id.* at 608, 703 S.E.2d at 579. Thus, the Dunns' use (or that of their predecessors in title) of the Lantz Roadway was not litigated in the 2004 Litigation, nor was it litigated under the legal standard that now applies. Neither the doctrine of collateral estoppel nor the doctrine of virtual representation applies to an issue that has not previously been litigated.[6]

Second, it should be clear that any reference to public use that appears in the 2004 Order does not support the Dunns' prescriptive easement claim. Indeed, far from supporting such a claim, proof that "others, including the general public, used the road" or "that more people than just the named plaintiffs in the prior litigation used the Lantz roadway to access the Bear Run area" arguably leads to a rebuttable presumption that the Dunns' use of the Lantz Roadway was *permissive*—i.e. *not* adverse—and imposes on the Dunns a burden to "show[] a claim of exclusive or peculiar right in [them], distinct from that of the general public." *Hall* at 155, 114 S.E. at 449, syl. pt. 3, in part. Thus, the particular facts the majority decision relies on to affirm the circuit court actually demonstrate that the circuit court should be reversed.

---

[5] Accordingly, Mr. Dosch's admission "[t]hat the Defendants herein [i.e., Mr. Dosch and his trust] full[y] and fairly litigated *issues concerning the access to the roadway* as described above" does not support the Dunns' adverse possession claim. (Emphasis added).

[6] For the same reasons, judicial estoppel—which "bars a party from *re-litigating* an issue"—is unavailable as a basis for affirming the circuit court. Syl. Pt. 2, in part, *W. Va. Dep't of Transp., Div. of Highways v. Robertson*, 217 W. Va. 497, 618 S.E.2d 506 (2005) (emphasis added).

Finally, I am troubled by the circuit court's failure to follow *O'Dell*'s clear holding that a prescriptive easement must be described with precision. In *O'Dell*, we held that "'[t]he precise location of an easement sought to be established should be described either by metes and bounds or in some other definite way.' Syllabus Point 1, in part, *Nutter v. Kerby,* 120 W.Va. 532, 199 S.E. 455 (1938)." *O'Dell* at 598, 703 S.E.2d at 569, syl. pt. 12. We also imposed a duty on "[a] person claiming a prescriptive easement [to] prove the reasonably precise location of the starting and ending points of the land that was used adversely, the line that the use followed across the land, and the width of the land that was adversely used." *Id.* at 598, 703 S.E.2d at 569, syl. pt. 13, in part. These details are vital and must be memorialized in a properly detailed order because "'[a] right of way acquired by prescription for one purpose cannot be broadened or diverted, and its character and extent are determined by the use made of it during the period of prescription.' Syllabus Point 3, *Monk v. Gillenwater,* 141 W.Va. 27, 87 S.E.2d 537 (1955)." *Id.* at 598, 703 S.E.2d at 569, syl. pt. 11.

In this case, the circuit court made only cursory findings regarding the location of the Lantz Roadway.[7] The circuit court seems to have concluded that a more detailed description was unnecessary because:

> the roadway is described and/or shown not only in Judge Holland's Order [i.e., the 2004 Order] but also in the pictures from the time of the litigation; the survey the Defendant[s'] commissioned as shown above and further its origin is clearly shown in the survey obtained by Mr. Dunn.

Upon examination, these sources of information do not support the circuit court's analysis or satisfy the *O'Dell* standard. The 2004 Order contains only a general description of the Lantz Roadway's overall direction and the properties through which it passes.[8] Although the pictures in

---

[7] The circuit court order states, for example, that the "road starts on the Plaintiff[']s property in Murphy District, Ritchie County and then crosses the Defendant[']s property on the way to an area commonly known as Bear Run." Elsewhere the order refers to "a roadway intersecting with State Rd 53/1 [that] passes through the Defendant[']s property allowing access to the area of Richie County known as Bear Run" and notes the prior court's finding that a roadway existed that "intersected with State Road 53/1 and then passed through Mr. Lantz's property and then through the Smith, Brooks and Dosch properties, ultimately allowing access to what is known as the Bear Run Area." Significantly, though the circuit court order finds that the parties *testified* about the course and width of the Lantz Roadway, the circuit court order does not adopt the details of that testimony as the finding of the court. Indeed, the court found that "the issue of whether the [Dunns] have independently established the [existence and location of the Lantz Roadway] is moot."

[8] The 2004 Order merely reports that

> [t]here is a roadway present upon the aforesaid properties [i.e., identified properties belonging to Mr. Lantz, Mr. Smith, Mr. Brooks, and Mr. and Mrs. Dosch], running west to east. It begins

16

question do depict various aspects of the Lantz Roadway, they do not satisfactorily establish its location and width *on the ground*.

These are serious defects. "If there is anything affecting a man's land that should be definitely ascertainable it is a way." *Crosier v. Brown*, 66 W. Va. 273, 274, 66 S.E. 326, 327 (1909), *holding modified by O'Dell*, 226 W. Va. 590, 703 S.E.2d 561. "The sacred right of property demands that such serious incumbrance upon a man's estate, if established by record, shall be clearly defined by the *record* memorial. The *evidence* does not make it definite." *Ibid.* (emphasis added). Accordingly, even if the Dunns had established a prescriptive easement, which they did not, the circuit court's failure to specify the bounds of the right-of-way with precision would warrant remanding this case to the circuit court. Syl. Pt. 4, *Post v. Wallace*, 119 W. Va. 132, 192 S.E. 112 (1937), *overruled on other grounds by O'Dell*, 226 W. Va. 590, 703 S.E.2d 561. ("Where the right of a plaintiff to continue the use of a right of way over the land of another is clear, and the decree of a court establishing such use is defective as to the description or location on the ground of such right of way, this court will remand the cause for the purpose of legally carrying into effect the rights so established.").

In summary, the majority erroneously applies collateral estoppel in this case despite the fact that the 2004 Litigation and the present case do not involve all of the same parties, do not address identical factual issues, and do not involve application of the same legal standards. Moreover, without citing legal authority in which the theory of virtual representation has been applied under facts such as those present here to establish a prescriptive easement, the majority simply affirms the circuit court's application of such theory to bridge the obvious and fatal gap that is present in this case. The respondents could have participated in the 2004 Litigation but did not do so. They cannot now rely on the actions of others, who were not their predecessors in title, to establish the adverse, continuous, and uninterrupted use they must show to obtain a prescriptive easement for their own use. Because I believe that the Dunns' alleged use of the Lantz Roadway was not truly litigated in the 2004 Litigation, and because I believe that the circuit court's order fails to describe the alleged prescriptive easement with precision, I respectfully dissent.

---

on the property owned by Mr. Lantz and passes through the properties set forth above.